## WILLIAMS *vs.* THE STATE.

[INDICTMENT FOR BIGAMY.]

1. *Bigamy; lawful wife not competent witness against husband on trial on.* In a prosecution for bigamy, the first and true wife can not be admitted to give evidence against her husband.
2. *Same; jurisdiction of offense.*—The local jurisdiction of bigamy is in the county where the defendant married or cohabited with the second wife.
3. *Marriage, contracted through fear of imprisonment; when not void.*—Marriage contracted through fear of imprisonment is not void, when the fear was not imposed as an inducement to the marriage, but arose from the arrest and prosecution of the party for bastardy.
4. *Cohabitation; is evidence of what; what can not affect.*—Cohabitation is evidence of marriage, but it can not make a void marriage valid.

APPEAL from the City Court of Mobile.
Tried before the Hon. C. F. MOULTON.

Williams, the appellant, was indicted at the June term, 1869, of the city court of Mobile, for bigamy; went to trial on the plea of "not guilty," was found guilty, and sentenced to the penitentiary for two years.

The evidence, as shown by the bill of exceptions, was as follows: Sarah Coleman testified, that she was married to defendant in Mobile county, Ala., by McCormick, a justice of the peace, in April, 1869, the defendant at that time be-

Williams v. The State.

ing arrested, on her affidavit, on a charge of bastardy; that defendant was willing to marry her; that in May, 1869, she had defendant arrested again, on a charge of bigamy, and that while the defendant was in arrest at the office of the justice of the peace, he voluntarily stated that "he had been married to Pauline Dyer, at Uniontown, but did not state whether Uniontown was in or out of this State, and witness did not know where Uniontown was; that Pauline Dyer was now living in this State, and was present at the J. P.'s office at the time defendant was arrested for bigamy; that defendant lived with witness about a month after her marriage, he going home with her immediately after the marriage."

McCormick, the justice of the peace referred to in the testimony of witness, Sarah Coleman, testified, "that upon complaint of said Coleman, in April, 1869, he issued a warrant for the arrest of defendant, on a charge of bastardy, and when defendant was in custody, he read to him a law, requiring defendant to be sent to jail, or give $1,000 bond, or marry Sarah Coleman;" that he immediately married the defendant and said Coleman, defendant still being in custody, and immediately after the marriage released him; that on the second arrest, when defendent was before him in May, 1869, on a charge of bigamy, "defendant admitted that he had married Pauline Dyer, in Clarke county in this State, and that defendant said that he thought he had a right to marry again by going out of the county."

Bates, the constable, after testifying to the arrest of the defendant, as before stated in the testimony of the witnesses, Coleman and McCormick, testified, that defendant, while a prisoner, said he would marry Sarah Coleman, which he did, voluntarily; that witness went with him to get some money to buy a license; that he went with defendant to the probate judge's office, and obtained the license; that on the second arrest, before stated, witness heard defendant, while he was a prisoner, say that he had been married to Pauline Dyer; that defendant did not say where he married defendant, but only that he married her "up the river, and out of this county."

3

The prisoner objected to the admissions or confessions, made by him, being received, and moved to exclude them, but his motion and objections were overruled, and defendant excepted.

William Young, Aggie Simpson, and Robert Childs, defendant's witnesses, testified, that they were standing on the side-walk in front of 'squire McCormick's office, and witnessed the marriage between defendant and Sarah Coleman; that defendant refused to marry her; that he said *no* during the performance of the entire ceremony, in answer to all questions put to him by the 'squire in regard to the marriage; that 'squire McCormick went on marrying them any how, not regarding defendant's refusals.

One of the above witnesses testified, that McCormick told the defendant he must marry Sarah Coleman or go to jail; that defendant wanted to get a lawyer, and defendant refused to let him get one.

There was some testimony on the part of these witnesses, that defendant staid with them for two or three days immediately after the marriage, but that after those two or three days they had frequently seen defendant at Sarah Coleman's house. One or two of these witnesses also testified, that the 'squire married defendant and Sarah Coleman " out of a book."

McCormick, on being recalled, testified, that he had not married them " out of a book," but that one hour and a half before the ceremony, he read defendant some law out of a book, as stated in his direct examination; that he did not see defendant's witnesses when he performed the ceremony, and that they were not present.

It was admitted by the State, that there was no place in Mobile county called Uniontown; and by the defendant, that there was and is such a place in the State.

The foregoing was all the evidence.

The solicitor for the State asked the court to charge the jury, " that if they believed that defendant cohabited with Sarah Coleman, and lived with her as his wife after the marriage, that this would amount to a ratification of the marriage, and counteract the want of consent at the time." The court gave the charge, qualified with the remark to the

jury, "that cohabitation, of itself, would not render a void marriage valid; that the jury might look to the evidence of cohabitation as a circumstance of the case, in determining in their own minds whether the marriage was valid or not, and only to this extent was the charge given." The defendant excepted to the charge as given.

Defendant then asked the following charges:

"1. Upon the evidence, defendant is entitled to an acquittal.

"2. Unless there was evidence that the marriage of defendant with Pauline Dyer was consummated in this county, the jury should acquit.

"3. If the defendant was induced by fraud, or by fear of imprisonment, to consent to the marriage with Sarah Coleman, and did not freely and voluntarily consent to the marriage, the first marriage was void.

"4. In determining whether the marriage with Sarah Coleman was voluntary, they should consider the condition of the accused at the time, as to his being a prisoner at the time, and his fear of being sent to jail."

The court refused each and all of these charges, and the defendant excepted.

Posey & Tompkins, for appellant, assign the following errors: First, in admitting his declarations as to the second marriage; and, second, in the refusal of the charges asked.

The admission of the confession as to the second marriage, is open to two objections. The law presumes that confessions are involuntary, and this presumption must be overcome by evidence that they were voluntary.—*Bill Miller v. The State*, 40 Ala. 54. There was no such evidence. And declarations are not admissible to prove a second marriage; the first marriage may be proved by the declarations of defendant, and cohabitation.—*Langtry v. State*, 30 Ala. 536. But the first marriage is only a matter of inducement, and not a crime. And it is a vexed question, even to its admissibility, to prove a first marriage. But the second marriage being the crime, it must be proved by other evidence.

The court erred in refusing the first and second charges.

There was a total failure of evidence as to the *venue*.    This is indispensable in all cases.—Constitution, art. 1, § 10 ; Old Code, § 3514 ; *Frank v. State*, 40 Ala. 12 ; *Green v. State*, 41 Ala. 419 ; Shep. Dig. page 20, and cases cited ; Wharton's Amer. Crim. Law, (4 ed.) 2627.

The court erred in refusing the third charge.    Such a marriage is utterly void.—2 *Kent's Com.* 76.    Also, in refusing the fourth charge.    The circumstances of a party at the time of doing an act, are evidence for or against him, to show his motive.

JOSHUA MORSE, Attorney-General, *contra*.


B. F. SAFFOLD, J.—The indictment charged that the defendant, having a wife then living, unlawfully married Pauline Dyer.

If he was guilty of the crime charged, the evidence shows that it was because of his former marriage with Sarah Coleman.    She was used as a witness for the State, to prove her marriage with the defendant, as well as his confessions of having married the other.    On a trial for bigamy, the first and true wife can not be admitted to give evidence against her husband.—Russell on Crimes, vol. 1, p. 218.

The record professes to set out all the evidence.    There was none that the defendant married or cohabited with Pauline Dyer, the second wife, in Mobile county.    Therefore, the first charge asked by the defendant, that upon the evidence he was entitled to acquittal, ought to have been given.—Revised Code, §§ 3599, 3941 ; Constitution, article 1, § 8.

The second charge asked by the defendant was erroneous, because it was immaterial whether the second marriage occurred in Mobile county or not, if there was cohabitation there.

The third charge asked by him was also properly refused, because the fear under which the defendant was supposed to be, was not imposed as an inducement to his marriage with Sarah Coleman, but arose from his arrest and prosecution for bastardy.    In other respects it was abstract.

The fourth charge asked and refused, was the same in effect as the third, and objectionable for the same reasons.

The charge asked by the solicitor ought to have been refused, for the reasons given by the court in explanation of it. Cohabitation, though evidence of marriage, can not make a void marriage valid.

The judgment is reversed, and the cause remanded.