## ADA E. GORDON

*v.*

## GEORGE B. GORDON.

*Filed at Ottawa March 24, 1892.*

1. DIVORCE FOR ADULTERY—*what cohabitation will justify.* Adultery, to justify a divorce, must be voluntary, and is not committed by a wife when she is compelled by force or ravishment, or when she has intercourse with a man not her husband through mistake in believing him her husband, without negligence on her part, or when she marries another man through a belief that her former husband is dead, and during the continuance of this belief lives in matrimonial intercourse with him, if the statute makes the second marriage merely voidable, and not absolutely void. If the second marriage is void, cohabitation under it will be adultery.

2. The marriage of a woman with a man whose wife by a former marriage is still living undivorced, is void, although the parties may have acted in the honest belief of a prior divorce.

3. After a hearing was had on a bill by a wife for a divorce, her solicitor gave her a paper which he said was a decree of divorce, and informed her that she was free to marry again, and procured her a license to marry, under which she married another man on May 7, when in fact the decree for divorce was not entered until May 28. In July or August following she learned the facts, and in the following January she was again married to the second husband : *Held,* that her cohabitation with the second husband from May 7 to May 28 was adulterous on her part, notwithstanding she believed she had been legally divorced from her first husband.

4. If, after a formal divorce, the defendant should suppose it valid when it was void because of some fact of which he had no knowledge, then, since the parties are not bound to know the facts, cohabitation under a second marriage contracted by him would not be adultery, unless continued after he became aware of the facts.

5. SAME—*recrimination in defense.* Where the party seeking a divorce on the ground of adultery is also guilty of the same offense, the defendant may, by answer, set up that fact as a bar to the relief sought.

6. CHANCERY PRACTICE—*defendant in contempt for disobeying order of court.* Although a defendant in a divorce suit may be in contempt of court in disobeying an order for the payment of temporary alimony to his wife, the court can not, for this cause, deprive him of the right of defense and strike his answer from the files.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. D. T. DUNCOMBE, and Mr. ERNEST LANGTRY, for the appellant:

There can be no crime committed without a wrongful intent or criminal negligence. Bishop on Crim. Law, (7th ed.) 287, sec. 285; 1 Paige, 16; *United States* v. *Pearce,* 2 McLean, 14.

A sexual intercourse, otherwise unlawful, is not adultery which causes divorce if occurring under an innocent mistake of facts. Bishop on Marriage and Divorce, p. 388, sec. 386; Bishop on Stat. Crimes, p. 231, sec. 231; p. 133, sec. 132.

The cohabitation of appellant with Wilson under the second marriage, under the belief she was divorced from her former husband, and under a mistake of the facts, is not adultery. *Nichols* v. *Nichols,* 31 Vt. 328; *Commonwealth* v. *Thompson,* 11 Allen, 23; *Commonwealth* v. *Mash,* 7 Metc. 472; *Moors* v. *Moors,* 121 Miss. 232; *State* v. *Goodenow,* 65 Me. 32; *Simons* v. *Simons,* 103 Mass. 572; *Bailey* v. *Bailey,* 45 Hun, 280; *Valleau* v. *Valleau,* 6 Paige, 207; *Oram* v. *Oram,* 3 Redf. 300; Bishop on Stat. Crimes, 356, 357; *Commonwealth* v. *Putnam,* 1 Pick. 136; *Jones* v. *Zeller,* 32 Hun, 288; *Cartwright* v. *Mc-Gown,* 121 Ill. 388.

Mr. FRANK IVES, for the appellee:

The court had no authority to deprive defendant of a right of defense for his failure to pay a money decree. *Becker* v. *Becker,* 15 Ill. App. 247; *Burgess* v. *Burgess,* 25 id. 525; *Peel* v. *Peel,* 50 Iowa, 521; Daniell's Ch. Pr. (6th ed.) 904; *Bailey* v. *Bailey,* 69 Iowa, 77; *Fry* v. *Ernest,* 9 Jur. (N. S.) 1151.

To constitute adultery there must be the *mens rea,*—the mind must accompany the act,—and the act must be knowingly consummated with a man other than the lawful husband. In other words, mere belief that a former marriage has been

dissolved by a decree does not answer the charge. *Nicolls* v. *Nicolls*, 31 Vt. 328; *McGiffert* v. *McGiffert*, 31 Barb. 69; *Simons* v. *Simons*, 103 Mass. 572; *People* v. *Barker*, 76 N. Y. 78; Stewart on Marriage and Divorce, sec. 242; *Flower* v. *Flower*, 42 N. J. Eq. 152; *Bailey* v. *Bailey*, 45 Hun, 278; *O'Dea* v. *O'Dea*, 101 N. Y. 23.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

Two questions are presented by this record: First, whether the court erred in striking out the answer of the defendant, George B. Gordon, for his failure to pay temporary alimony, as decreed by the court; and second, whether Ada E. Gordon, the complainant, was guilty of adultery by her marriage with Harvey Wilson on the 7th day of May, 1887, and her subsequent cohabitation with him as his wife from that date until the 2d day of March, 1889, when she discovered that her decree for divorce was invalid.

The questions involved are important, and not entirely free from difficulty. It is clear that the defendant was in contempt of court in failing to obey the decree of the court in ordering the payment of temporary alimony, and while the court had the power to resort to such means as are provided in chancery practice to enforce obedience to its decrees, whether the court had the power to go so far as to prevent the defendant from interposing a defense to the merits of the bill, while he was in contempt of court in failing to comply with a decree for the payment of temporary alimony, presents a serious question. There are authorities which sustain the ruling of the court. *Walker* v. *Walker*, 82 N. Y. 260, may be regarded as a leading case on the question. There, as here, the defendant in a suit for divorce was in contempt because of disobedience of an order of the court directing the payment of alimony, and it was held that an order directing defendant's answer to be stricken out unless he obey the previous order within five

days, and also an order striking out the answer upon his failure to obey, and directing a reference to take proof of the facts stated in the complaint, were proper.

Where a complainant is in contempt there may be cogent reasons for holding that his proceedings shall be stayed so long as he remains in contempt, under the well known maxim that "he who seeks equity must do equity." But this well known principle can not, in reason, be applied to a defendant who is merely defending himself against attack. Indeed, a rule denying a defendant a right of defense solely upon the ground that he had failed to pay a money decree in a divorce proceeding would seem to be a harsh one, and one, too, which in many cases might work great injustice. The rule, therefore, in *Walker* v. *Walker*, has not been looked upon with favor, and in many of the States, in its application to divorce cases, the courts have not followed it, but held the contrary doctrine. (*Pell* v. *Pell*, 50 Iowa, 521; *Bailey* v. *Bailey*, 69 id. 77; *In re Johnson*, 63 Cal. 578.) These cases hold, that although the defendant may be contumacious, the court can not deprive him of the right of defense. In *Haldine* v. *Eckford*, L. R. 7 Eq. 425, where the doctrine contended for was attempted to be applied, the vice-chancellor said: "Although the contempt committed by the defendants had been of the most flagrant kind, yet as what they asked was for the purpose of defending themselves, he had no jurisdiction to refuse the order." See, also, *King* v. *Bryant*, 3 M. & C. 191; *Wilson* v. *Bates*, id. 197.

The power of the court to commit the defendant until he obeyed the order of the court, or showed a satisfactory excuse for a failure to comply, is not questioned or denied; but upon what principle of justice can a ruling be sustained which denied a defendant all right to be heard in defense of the case made in the bill? If the court had the power to strike out the answer, it necessarily had the power to refuse to hear any evidence the defendant might offer in answer to the bill or in

support of the matters set up in the answer. A rule of this character once established in divorce cases, would not, in our judgment, have a beneficial effect upon the rights of parties, and in many cases the tendency of the rule would be to bring the law into disrepute. Under our practice, divorces are granted and marriage contracts set aside quite as readily as could be desired, if proper regard is given to the well-being of society; but should a defendant be denied the right of all defense for non-payment of alimony, in many cases, doubtless, divorces would be granted and marriage contracts set aside upon false or insufficient evidence, for the reason the defendant was denied the right to expose a false or fictitious case. It is true that the defendant's counsel was permitted to cross-examine complainant's witnesses, but this did not cure the error. When the answer was stricken out the foundation for the defendant's defense was gone. He had the right to presume that no evidence would be allowed or considered in defense of the matters relied upon to defeat the bill.

Section 10 of chapter 40 of the Revised Statutes of 1874 provides, that in suits for divorce when adultery is the ground of complaint, if it appears that both parties have been guilty of adultery, no divorce shall be decreed. The defense interposed in this case was, that the complainant had been guilty of adultery, and if the facts as they appear in the record are sufficient to sustain that charge, although the answer was stricken from the files, the decision of the Appellate Court holding that complainant had been guilty of adultery will have to be affirmed.

In Bishop on Marriage and Divorce (vol. 1, sec. 1507,) the author lays down the rule that adultery, to justify divorce, must be voluntary. The doctrine is also laid down that adultery is not committed where the party is compelled by force or ravishment, or where the wife has intercourse with a man not her husband through mistake, she believing him to be her husband, or where the wife marries another man

through the belief that her former husband is dead, and during the continuance of this belief lives in matrimonial intercourse with him. The author then adds: "If in the case last mentioned the statute makes the second marriage voidable, * * * in distinction from void, a cohabitation under it is not adultery." In section 1511 the author says: "If the second marriage is void, a voluntary cohabitation under it, otherwise than through innocent mistake, as just explained, will be adultery." In section 1514 the author says: "If, after a formal divorce, the defendant should suppose it valid when it was void because of some fact he had no knowledge of, then, since parties are not concluded to know facts, cohabitation under a second marriage contracted by him would not be adultery, unless continued after he became aware of the facts."

As we understand the argument of appellant's counsel, they rely mainly on the doctrine last announced by Bishop. In the argument it is said: "What the appellant did in this case she did under the sanction of the law and under a decree of the court. When she married the second time that decree remained absolutely good, and was binding until it was set aside, and she has the right to claim, as she had the right and still has the right to claim, the protection under that decree up to the time it was set aside."

In order to determine whether complainant falls within any of the rules heretofore alluded to, it will be necessary briefly to refer to the facts.

On the 2d day of March, 1887, complainant filed her bill for divorce against George B. Gordon, in the Superior Court of Cook county, on the ground, as alleged in her bill, of cruel treatment and adultery. Service was had by publication, and defendant did not appear. On the 7th day of May, 1887, the cause was called for trial, and complainant testified as a witness in the case. After the hearing, and on the same day, complainant was informed by her solicitor that she had obtained a decree of divorce, and he gave her what purported

to be a copy of the decree, certified by him, as notary public, and informed her that she had a right to marry. He went with her to the office of the county clerk and obtained a license, and on that day she was married to M. H. Wilson, and cohabited with him as his wife until March, 1889. It turned out, however, that no decree was rendered on May 7, but on May 27 more evidence was taken, and a decree of divorce entered on May 28, 1887. In July or August, 1887, complainant learned that the paper her solicitor had furnished her was not a copy of a decree, and she then procured a certified copy of the decree of May 28, and in the following January she was again married to Wilson. On February 7, 1889, the defendant appeared in court and filed a petition to set aside the decree of divorce, on the ground that it had been obtained by false and fraudulent evidence, and on April 13 the decree was vacated and set aside. On September 19, 1889, the complainant, Ada E. Gordon, filed this her second bill against George B. Gordon, charging him with adultery.

It will be observed that the complainant cohabited with Wilson as his wife from May 7 until May 28,—a period of twenty-one days,—while she was the lawful wife of the defendant, before she obtained a divorce, so that during this period she can not claim the protection of any decree, either void or voidable, as no decree was in existence until May 28, 1887. It will therefore serve no useful purpose to enter upon a discussion of the question whether the decree of May 28 was void or voidable, or whether the cohabitation of complainant with Wilson after the rendition of that decree was adulterous or not, because if the complainant was not guilty of adultery by cohabiting with Wilson after the decree was rendered, the question would still remain as to the legal effect of her cohabitation before the decree was rendered. We will therefore confine what we may say to that branch of the case.

*Bailey* v. *Bailey*, 45 Hun, 280, has been cited and relied on by counsel for appellant. In that case a decree of divorce

having been granted in favor of the complainant, he at once married another woman. Subsequently, the defendant appealed, but the complainant continued to cohabit with his wife by the second marriage for about ten months, when the judgment was reversed, and the question presented was, whether complainant was guilty of adultery with a woman under a second marriage while the judgment granting him a divorce was in full force, and the court held he was not. Without stopping to determine whether the rule laid down in this case is the correct one or not, it is manifest that the case can not be regarded as an authority on the question involved, for the reason that the cohabitation of complainant with Wilson, relied upon here, was not under a judgment or decree of court.

The next case relied upon is *Valleau* v. *Valleau*, 6 Paige, 207. In this case the husband deserted his wife for more than five years, and after an absence of seven years the wife, not knowing that the husband was alive, in good faith married and cohabited with a second husband, and it was held that the wife was not guilty of adultery. This decision is predicated, to a great extent, on a statute of New York which provides that a second marriage contracted in good faith, where the first husband has absented himself for five years without being known by the wife to be living, is only voidable. See Bishop on Marriage and Divorce, sec. 283.

*Oram* v. *Oram*, 3 Redf. 300, has also been cited. This was an application to revoke letters of administration granted to a wife on the estate of a second husband, the former husband being alive when the second marriage was entered into, and it was held that the second marriage was void, and the letters of administration granted to her as the widow of the second husband should be revoked. This case has no special bearing on the question involved.

*Smith* v. *Smith*, 64 Iowa, 682, has also been cited, but this case, upon examination, will be found not to be in point. Indeed, no authority has been cited which holds that the co-

habitation of the complainant with Wilson before a decree of divorce was granted is not adultery, and so far as our investigation has gone we have found no such authority,—indeed, the authorities all seem to hold a contrary view. Stewart on Marriage and Divorce, (sec. 242,) says: "*Bona fide* but erroneous belief of a husband that his wife is divorced from him does not save his intercourse with another woman from being adultery."

*State* v. *Goodenow*, 65 Me. 32, is a case in point. The defendants were on trial for adultery, and they offered to prove, as a defense, that Hussey, the former husband, deserted his wife and married another woman; that the justice of the peace who united the defendants in marriage advised them that on account of such desertion and marriage they had the right to intermarry, and that they believed the statement to be true, and acted upon it in good faith. It is there said: "The defendants say that they were misled by the advice of the magistrate of whom they took counsel concerning their marital relations. But the gross ignorance of the magistrate can not excuse them. They were guilty of negligence and fault to take his advice. They were bound to know or ascertain the law and the facts at their peril. * * * The facts proved may mitigate but can not excuse the offense charged against them."

*Moors* v. *Moors*, 121 Mass. 232, is also a case in point. It is there said: "The decree *nisi* heretofore entered in this case, as the term imports, is provisional, only, and did not have the effect of dissolving the marriage between the parties. The libelant was not entitled to a full divorce until he had proved that he had given the notice required by the rule of the court under the statute, and that no cause to the contrary had been made to appear. Of course, the subsequent marriage which the libelant has undertaken to contract with another woman is illegal and void. (*Graves* v. *Graves*, 108 Mass. 314; *Edgerly* v. *Edgerly*, 112 id. 53.) It is urged that as the libelant acted under the belief that he had obtained a divorce

and was at liberty to marry again, his intercourse with the woman whom he had since married was not adulterous. But we do not find in the facts * * * anything to justify him in such assumption. * * * If he acted in good faith, and under an honest mistake as to his rights and duties, that fact might properly be considered in mitigation of punishment if. he should be indicted for adultery, but it would be of no avail as a ground of defense." See, also, Bishop on Stat. Const. sec. 664; *Simons* v. *Simons,* 103 Mass. 572; *Commonwealth* v. *Thompson,* 11 Allen, 23.

It is true that after the hearing the complainant's solicitor gave her what purported to be a copy of a decree of divorce, which he certified as a notary public, and the complainant also testified: "After the hearing Mr. Beatty told me I had my decree, and that I could marry, or do as I pleased." Reliance seems to be placed upon what the complainant's solicitor did and said, as a justification of the complainant's intercourse with Wilson before she obtained a decree of divorce. If the complainant was on trial on a charge of adultery, and had acted in good faith, in an honest belief of the truth of what her solicitor said and did, such facts might properly be considered in mitigation of punishment; but such facts can not be relied upon as a ground of defense in this action. The complainant seems to have been a woman of intelligence, and at least of ordinary business capacity. She appeared at the trial on her application for divorce. Wilson, the man she married, was also present, and she had an opportunity to consult with him. There was no difficulty in ascertaining whether she had obtained a decree of divorce, or not. If she or Wilson had gone to the clerk of the court, he would have informed them in regard to the matter. It was the duty of complainant to ascertain and know, before she entered into the marriage relation with another man, that she had procured a divorce. She had no right to rely upon the falsehood of an unscrupulous attorney, when, without trouble or expense,

she could have gone to the clerk of the court where the cause was heard and learned the truth, and the ignorance or dishonesty of her solicitor can not be relied on as an excuse for her negligence.   As said before, the complainant was present at the hearing, and had as good an opportunity to learn and know the result of her case as did her solicitor, and under such circumstances she had no right to rely upon any false statement her solicitor might see proper to make.   Indeed, while the conduct of complainant's solicitor in furnishing her a copy of a decree when none had been rendered, and saying to her that she was at liberty to enter into the marriage relation, can not be excused, at the same time the facts surrounding the transaction seem to indicate that undue haste for a second marriage had at least some influence on the conduct of complainant.   Her marriage with Wilson before she obtained a divorce from Gordon was void.

The law on this subject is well settled by the decisions of this court, as well as by the decisions in other States.   In *Reeves* v. *Reeves*, 54 Ill. 333, on a petition for divorce, it was held that the marriage of a woman with a man whose wife by a former marriage was still living undivorced, was void.   In *Cartwright* v. *McGown*, 121 Ill. 388, in considering the effect of a second marriage where a divorce had not been granted, it is said: "The marriage of a man and woman where one of them has a husband or wife of a prior marriage who is then living and undivorced, is void, and not merely voidable."

If the marriage of the complainant with Wilson was void, as held in the cases cited, we are aware of no principle upon which it can be held that her cohabitation with him was not adulterous.   The marriage with Wilson being void, she occupied the same position that she would have occupied if she had cohabited with him without marriage.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHOPE, dissenting.