The opinion of the court was delivered by
Watkins, J.
The object of this suit is to obtain a judgment decreeing the ceremony of marriage between the plaintiff and defendant ab initio null and void, and that they were never married to each other; and further decreeing that no community or other marital rights ever resulted from the ceremony of marriage which was performed between them — their legal status of unmarried persons never-having been thereby changed or affected.
The allegation of the petitioner is, “That on the 10th of June, 1897,. he was compelled by force and threats to procure a (marriage) license and go before John L. Wasey, justice of the peace, at Lake Charles, La., and there, under threats, to go through the ceremony of marriage with (the defendant).”
He avers that he had never promised said Margaret Ryan to marry her, and that she had no legal or just ground to demand of him that he should marry her; and that one George W. Ryan, an uncle of the defendant, commanded him to marry her under penalty of death— said Ryan being aided, abetted and assisted by several other male relatives of the said defendant, while petitioner was at the same time protesting against this exercise of force and duress. And he further avers that notwithstanding his unwillingness to marry her and repugnance to said marriage, and his protestations to them that Margaret Ryan had no claims upon him whatever, said George W. *1712 Ryan and his associates forced him, under fear of death, to go to the clerk’s office and take out a marriage license to marry her, and forced him to go before said justice of the peace and there in the presence of said persons to go through the marriage ceremony — said justice of the peace and the said Margaret Ryan being at the time fully aware that he was acting under duress and violence and altogether against his will in submitting to said marriage ceremony.
He further alleges, that immediately after the completion of said marriage ceremony he withdrew as soon as he was released from said coercion and duress, without saying one word to Margaret Ryan — protesting that said ceremony and proceedings were against his will, without his consent and under duress and fear of instant death — and has ever since continually remained away from her and refused to consummate the marriage by cohabiting with her.
Therefore petitioner avers that said marriage ceremony and other proceedings were violations of law, against his consent under force, duress and compulsion, and can not in law produce any legal results.
The answer of the defendant is a general denial.
After due proceedings and trial there was a judgment pronounced against the plaintiff, rejecting his demands, and he prosecutes this appeal therefrom.
One of the plaintiff’s witnesses testified that about three hours previous to the marriage he told the plaintiff that he had seduced defendant, his niece, and had to marry her; and that his reply was “ to give him a little time and he would do what was honorable by her.” That two or three hours afterward he happened to meet the plaintiff at the railroad depot, just as he was about to board the train, and “ stopped him and told him to come back to town and fulfil the promise he had made me.”
The witness said he did not threaten plaintiff with violence, but that “he insisted upon his going back with him.” He said he stayed with him' until he married the defendant; that he stayed with him for the purpose of seeing that he married her.
He said that he used no force, but told him he had to marry the defendant. That it was his privilege to marry her or not; but that he “ intended to do everything (he could) to make him marry her.” He states that he accompanied him to the clerk’s office to procure a marriage license. That plaintiff asked him “ to go and get John *1713 "Wasey ” (the justice of the peace), and he went to Wasey’s boarding house after him.
He states that “ after he told me he would do what was honorable-by (the defendant), he did not stay with him; but it was several-hours afterward before he saw him again.”
There were only five present at the ceremony in addition to the parties and the justice of the peace.
On cross-examination the following occurred, viz.:
“ Q. Did Oollins at any time refuse to marry this girl?
“ A. No, sir?
********
“ Q. When you went to the house of Mr. Stoddard — the place where the ceremony took place — were there any threats (made) against him?
“ A. No, sir.
“ Q,. Did he not go through the marriage ceremony willingly?
“ A. I was not in the house when it went on.
“ Q. You did not see any violence toward him, did you?
“ A. No, sir.
" Q. If he had persisted in not marrying her could he not have done as he wanted to ?
“ A. I think he could.
“ Q,. Did he appear to be frightened?
“ A. He did not seem so.
*******
“ Q. Did Oollins call for a marriage license?
“A. Yes, sir; he asked Mr. Oollins to issue it.
“ Q. At the time Mr. Gosset was issuing the license was there any trouble between Oollins and you?
“ A. No, sir; I did not go into the court house until afterward.”
Another witness of the plaintiff states that after the parties had assembled at the place where the wedding was to take place “ the lady walked in and sat down, and nobody said a word for perhaps half a minute. Then Mr. Wasey motioned to Ben (the plaintiff) to know if that was the lady, and he said, or motioned, that it was. Then Wasey told them to get up and join hands and go through the ceremony.” That he “ does not think anything at all was said after the ceremony.”
That immediately after the ceremony the plaintiff accompanied *1714 witness and others down town; and if any conversation took place after the ceremony he did not hear it.
On cross-examination the following occurred, viz.:
“ Q,. You say you were present at that marriage — did plaintiff answer any of the questions put to him during the ceremony by Mr. Wasey?
" A. Yes, sir.
“ Q. Answer them without any objections?
“ A. He simply said ‘ I do when asked if he would take the lady for his wife. He did not state any objections during the ceremony.”
Another witness made a statement similar to that of the first one interrogated, and confirmed his testimony to the effect that plaintiff professed a willingness to do what was right by the girl. Aside from the testimony we have quoted, there are a great many details of similar character and import; and all of them taken together have given us the impression that, originally, it was neither the purpose or expectation of the plaintiff to marry the defendant. But the relations of the defendant insisted upon the plaintiff marrying the girl, believing that he had seduced and ruined her; and that to marry her was his duty under the circumstances. That upon due consideration of the pressure which was brought to bear upon him, and of his duty to repair a wrong he had confessedly done the girl, he yielded a reluctant and passive con-ent to the performance of a marriage ceremony. We are of opinion that he has not presented a case which entitles him to relief.
Judgment affirmed.