## CLARK *et al.* v. BARNEY *et al.*

No. 95.   Opinion Filed July 13, 1909.

(103 Pac. 598.)

1.  **QUAERE.** Quaere: Is a marriage under the common law, without a celebration or solemnization in manner provided by our statute, permissible under the laws as now in force in this jurisdiction?

2.  **MARRIAGE—Common-Law Marriage—Presumptions.** A marriage contracted by two parties, one of whom had a living, undivorced spouse, which was known by both parties to the alleged marriage contract, which was bigamous and criminal in its inception, the undivorced spouse dying shortly after such bigamous marriage, and said relations continuing thereafter without any apparent change until the death of one of the parties thereto, there is no presumption of change of relations, and without more such could not ripen into a common-law marriage.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; B. F. Burwell, Judge.*

Action between J. E. Clark and others and Charley E. Barney and others. From the judgment, Charles E. Barney and such others bring error. Affirmed.

*J. H. Woods,* for plaintiffs in error.

*Cade & Stanard* and *J. H. Wahl,* for defendants in error, citing: Bishop on Marriage and Divorce (4th Ed.) Vol. 1, secs. 506-7; *Rose v. Rose,* 67 Mich. 619; *Cartwright v. McGown* (Ill.) 2 Am. St. Rep. 105; *Spencer v. Pollock et al.* (Wis.) 17 L. R. A. 848; *Rice v. Randlett* (Mass.) 6 N. E. Rep. 238; *Floyd v. Calvert,* 53 Miss. 37; *Appeal of Reading Fire Ins. Co.* (Penn.) 57 Am. Rep. 448; *Badger v. Badger,* 88 N. Y. S. 46; *Brinkley v. Brinkley,* 50 N. Y. 198; *Cunninghams v. Cunninghams,* 2 Dow. 483; 19 Ency. Law. (2nd Ed.) 1206, and cases cited in note 5; *Williams v. Williams,* 46 Wis. 464; *Collins v. Voorhees,* 47 New Jersey Equity, 315; *Voorhees v. Voorhees,* 46 New Jersey Equity,

411; *Edelstein v. Brown et al.* (Tex. Civ. App.) 80 S. W. Rep. 1027.

WILLIAMS, J. The only question essential for the determination of this case is whether or not Elizabeth A. Barney was the lawful wife of Joseph A. Barney at the time of his death. This case was tried in the lower court upon an agreed statement of facts, to wit:

"(3) That Joseph A. Barney and Mrs. E. A. Barney, a widow, were legally married about the year 1880, and that two children were born of this marriage and are now living and over the age of 21 years. * * *

"(5) That Mrs. E. A. Barney, nee. Clark, and Joseph A. Barney, separated and were legally divorced at Topeka, Kan., on the 24th day of January, 1884.

"(6) That after Mrs. E. A. Barney was divorced from Joseph A. Barney, said Joseph A. Barney married Mrs. Margaret Fensky in North Topeka, Kan., on the 5th day of February, 1885, and to this marriage two children, Gertrude and Augusta Barney, were born, and they are now living and of lawful age.

"(7) That after Gertrude and Augusta Barney were born Joseph A. Barney and Mrs. Margaret Barney, nee Fensky, separated but were never divorced.

"(8) That some time prior to the 12th day of June, 1890, an action for divorce was begun by said Margaret Barney, against said Joseph A. Barney in the district court of Shawnee county, Kan. That said action was dismissed by the plaintiff on the 12th day of January, 1890.

"(9) That said Joseph A. Barney, Mrs. E. A. Barney, and Mrs. Margaret Barney were living in said Topeka, Shawnee county, Kan., at the time the last-named action for divorce was begun and dismissed.

"(10) That on the 22d day of August, 1894, said Joseph A. Barney and Mrs. E. A. Barney, who had therefore been legally divorced as above stated, were remarried at Oklahoma City, Okla., and of this marriage no children were born.

"(11) That at the time said Joseph A. Barney and E. A. Barney were so remarried at Oklahoma City, the said Margaret Barney was living at Topeka, Kan., and undivorced from said

J. A. Barney, and that said Joseph A. Barney and Mrs. E. A. Barney knew she was then so living at Topeka, Kan.

"(12) That the said Margaret Barney, nee Fensky, died at Topeka, Kan., on the 14th day of October, 1894, and that immediately thereafter said Joseph A. Barney and Mrs. E. A. Barney learned and knew of the death.

"(13) That at the time of the remarriage of the said Joseph A. Barney and E. A. Barney, and for some time prior thereto, to wit, from September 22, 1891, the said Joseph A. Barney was living upon and occupying a homestead claim near the city of Shawnee; the said land being involved in this distribution. That immediately after said marriage he and Mrs. E. A. Barney went to said homestead claim and commenced housekeeping thereon, and from that time on lived together on said claim, openly and publicly, as husband and wife, and held themselves out to all neighbors and friends as husband and wife; and were treated and recognized by all neighbors and friends coming in contact with them as husband and wife, and that condition continued until the death of said Joseph A. Barney, on or about the 15th day of October, 1900, and that Mrs. E. A. Barney survived him and died a short time thereafter leaving said children surviving her, but no husband."

It is insisted by the plaintiffs in error that under the agreed facts a common-law marriage was consummated between said parties. In the case of *Reaves v. Reaves,* 15 Okla. 243, 82 Pac. 490, 2 L. R. A. (N. S.) 353, the court said:

"Under this finding of fact it is apparent that on the 25th day of June, 1890, the defendant in error, Frances A. Reaves, and the deceased, H. H. Reaves, both being parties capable of performing a marriage contract, entered into an agreement whereby they were to be husband and wife to each other, and did immediately begin living together and cohabiting with each other as married persons."

In that case, certain laws of the state of Nebraska in force in the territory of Oklahoma applying, it was held that a common-law marriage was valid. As the question is not discussed in the briefs of counsel as to whether or not a common-law marriage was permissible under the laws of the territory of Oklahoma, as the same were in force from August 22, 1894, to October 15, 1900,

for the purpose of this case it is assumed, without expressly pass-
ing upon the question, that such a marriage would have been
valid.  Counsel for plaintiffs in error have cited us to a great
number of cases, to the effect that there is a presumption that by
contracting the second marriage the parties desired matrimony,
and not an illicit relation, and therefore their consent to matri-
mony continued after the removal of the disability; but in these
cases the parties entered into the marriage contract in good faith,
and such contract, though being void, having been made in good
faith, when that obstacle or impediment was removed, the same
relation being continued, the presumption of good faith continued
with it, and it ripened into a common-law marriage.

It seems to be the rule, where common-law marriages are per-
missible, that, although no subsequent marriage ceremony is per-
formed, the parties having previously, under the forms of law
evidencing the contract of marriage, assumed that relation in
good faith and innocent of any wilful intention to commit wrong,
believing that the contract of marriage was valid, and having
continued that relation in good faith for a long period after it
could have been legally assumed, the presumption arises that
thereby they intended and meant marriage, mutually consenting
to a contract of that character.  *Williams v. State,* 44 Ala. 24;
*Pool v. People,* 24 Colo. 510, 52 Pac. 1025, 65 Am. St. Rep. 245;
*Gordon v. Gordon,* 141 Ill. 160, 30 N. E. 446, 21 L. R. A. 387;
33 Am. St. Rep. 294; *Cartright v. McCown,* 121 Ill. 388, 12 N.
E. 737, 2 Am. St. Rep. 105; *Harris et al. v. Harris et al.,* 85 Ky.
49, 2 S. W. 549; *Rose v. Rose,* 67 Mich. 619, 35 N. W. 802;
*Voorhees v. Voorhees et al.,* 46 N. J. Eq. 411, 19 Atl. 172, 19 Am.
St. Rep. 404, dissenting opinion by Judge Garrison, 47 N. J. Eq.
315, 20 Atl. 676, 14 L. R. A. 364, 24 Am. St. Rep. 412; *Petit v.
Petit,* 105 App. Div. 312, 93 N. Y. Supp. 1001; *In re Reading
Fire Ins. & Trust Co.,* 113 Pa. 204, 6 Atl. 60, 57 Am. Rep 449;
*Henry et al. v. Taylor,* 16 S. D. 424, 93 N. W. 641; *Spencer v.
Pollock et al.,* 83 Wis. 215, 53 N. W. 490, 17 L. R. A. 848;
*Williams v. Williams,* 46 Wis. 465, 1 N. W. 98, 32 Am. Rep. 722;

*Cunninghams v. Cunninghams,* 2 Dow. 483, House of Lords, Book 3, p. 483, 3 Eng. Rep. (Full Reprint) 939.

In this case it appears from paragraph 11 of the agreed facts that, when the alleged second marriage took place at Oklahoma City, the said Margaret Barney was then living at Topeka, Kan., undivorced from the said Joseph A. Barney, and that he and the said Elizabeth A. Barney knew that she was so living at Topeka, Kan. Under said admission the parties knew that they had not the capacity to consummate a marriage contract, and when they assumed such relations they knew it was unlawful and adulterous; nothing being *bona fide.* And whilst it is the policy of the law to encourage legitimacy, yet, in order to do so, it will not encourage licentiousness. This relation in its inception being bigamous and adulterous, after the death of the said Margaret Barney there is no presumption of a change of relation, and if there was such a change it must expressly appear by proof, to place the parties in the eyes of the law in a lawful relation. Common-law marriage grows out of good faith, honest intentions, and proper purposes, and if wilful bigamous relations, after the death of the party who has been wronged by the other spouse, are to ripen *per se* by the continuance of such cohabitation, without any perceptible change in the manner of such relations, into a common-law marriage in order to put the seal of legitimacy upon such cohabitation, it would tend to put a premium upon the disregard of marital relations, rather than the ukase of the law against it.

The judgment of the lower court is affirmed.

All the Justices concur.