(89 South. 508)

KELLEY v. KELLEY. (4 Div. 923.)

(Supreme Court of Alabama. June 30, 1921.)

1. Marriage ⬤⟿58(8)—Obtained by duress under threats may be annulled.

A marriage by duress under threats may be annulled by a court of equity.

2. Marriage ⬤⟿58(8)—Entered into after seduction of wife. not annulled for duress, in absence of proof of actual threats of bodily harm.

The mere fact that a husband, who had seduced wife prior to the marriage ceremony, feared bodily harm if he did not marry the seduced girl, did not warrant annullment of marriage on ground of duress, in the absence of proof as to actual threats of bodily harm.

Appeal from Circuit Court, Pike County; A. B. Foster, Judge.

Bill by Lester Kelley against Verbie Kelley for divorce, with cross-bill by Verbie Kelley, seeking divorce and alimony. From a decree granting the respondent a divorce on her cross-bill, but without alimony, complainant appeals. Affirmed.

The bill alleged that Lester Kelley was compelled to marry Verbie Kelley at the point of a pistol by her father and an uncle, and that as soon as he could he escaped, and had not lived with his wife at all. Cross-bill denies the duress, sets up abandonment, and asks for alimony in support of the wife and a child, alleged to be the child of the complainant by the respondent.

T. L. Borom and W. L. & R. S. Parks, all of Troy, for appellant.

Counsel insist that the bill has equity, and the decree is not authorized by the facts proven, which they discuss at some length, but without citation of authority.

John H. Wilkerson, of Troy, for appellee.

No brief came to the Reporter.

MILLER, J. Lester Kelley files bill against Verbie Kelley to annul a marriage contract on the ground of duress. The respondent files answer, in the nature of a cross-bill, for divorce, denies the duress, alleges abandonment, and asks for alimony. The court rendered decree denying complainant relief, holding the marriage valid, granting divorce on the cross-bill, refusing to give alimony, and permitting both parties to marry again. This decree is assigned as error.

The complainant and defendant were married by the probate judge of Pike county, Ala., on the third Sunday in July, 1911. They were in a buggy in the street in front of the residence of the probate judge when the ceremony was performed. The judge, Austin

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Faulk, uncle, and Jim Paul, father, of respondent, and a negro driver, were the only witnesses. The complainant and defendant never lived together as husband and wife. They separated by his leaving her before they reached home on the day of the marriage.

[1] A marriage by duress under threats may be annulled by a court of equity. 26 Cyc. p. 906, § 9, and page 908, § 2; Hawkins v. Hawkins, 142 Ala. 571, 38 South. 640, 110 Am. St. Rep. 53; Williams v. State, 44 Ala. 24. They were married the third Sunday in July, 1911. A child was born to her on November 8, 1911. It was their child, charged and proven, with practically no denial. The result of mutual matrimonial promises and seduction was the life of a child. This suit was commenced May 9, 1919, nearly eight years after the marriage.

"The burden of proof is on the person setting up 'duress to sustain his allegation, and it is said that to warrant the annulment of a marriage for duress the evidence must be clear, satisfactory, and convincing, 'especially when the man is the complainant and antenuptial intercourse is shown." 9 R. C. L. p. 306, § 78, headnotes 5, 6, and 7; 27 L. R. A. 385; Thorne v. Farrar, 57 Wash. 441, 107 Pac. 347, 27 L. R. A. (N. S.) 385, 135 Am. St. Rep. 995.

Austin Faulk and the judge of probate are dead. They died before the suit was commenced. Their testimony is not in the cause.

We' find the courts have declared the following principles of law to guide and govern when a man files bill to annul the marriage to one whom he has seduced under promise of marriage:

"The claim of duress is frequently made where the family and friends of the victim of seduction bring pressure upon the seducer to repair the wrong done by him by marrying the woman, and it may safely be said that the courts do not readily grant relief in such a case, even though the seducer consented to the marriage with the greatest reluctance. The courts recognize that the seducer has done no more than he ought to have done, and in case of doubt prefer to attribute his action to the better motives of remorse for the wrong done and to a sense of justice. Certainly, if the seducer, through the fear of the natural and probable consequences of his conduct, married to escape them, it would not be such duress as would avoid the marriage, in the absence of any force or direct threat of bodily harm at the time of the marriage." 9 R. C. L. p. 304, § 75, headnotes 13 and 14; Williams v. State, 44 Ala. 24; Honnett v. Honnett, 33 Ark. 156, 34 Am. Rep. 39; Collins v. Ryan, 49 La. Ann. 1710, 22 South. 920, 43 L. R. A. 814, and note.

The bill alleges duress, actual force just before the ceremony, under direct threats of violence at the muzzle of a pistol. Complainant's testimony supports these allegations. The testimony of defendant's witnesses is strong to the contrary. It shows pressure by her relatives for him to perform his promise of marriage, for him to right his wrongs by marrying her, and that his consent was very reluctant; but the evidence of her witnesses shows no force, no direct threats of bodily harm before or at the time of the marriage, and the use of a pistol at no time.

[2] The learned trial judge who rendered the decree in the court below wrote his opinion on the evidence as follows:

"So that I take it that unless the allegations made in the bill of a marriage as the direct result of bodily harm threatened at the time of the marriage, the marriage should not be annulled. If the facts are merely a moral suasion and even a fear of bodily harm, though none is threatened, they would not justify relief to the complainant. Bearing in mind the solemn duty of the complainant to the respondent, growing out of the seduction charged and proven with little or no denial, the duty being of such a grave and mighty character on the part of the complainant to marry the respondent, I conclude that the evidence does not measure up to the standard which the law requires to show that the marriage was the proximate result of bodily threats rather than that duty which every sense of morality and justice would dictate under the circumstances. Doubtless the complainant feared the consequences if he failed to marry the respondent, but I conclude that the evidence does not satisfy me of the existence of such actual threats as alleged in the bill and required by law to justify relief to the complainant. Relief will therefore be denied to the complainant."

We concur in his conclusions. His finding of facts from the evidence appears to us to be correct and proper, especially so as the bill was filed eight years after the marriage, and after the death of two of the main witnesses. It will serve no good purpose to discuss the testimony, analyze it, and show why and how the court below and this court reached these conclusions.

Finding no error in the record, the cause is affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.