(122 So. 648)

### GWIN v. GWIN. (1 Div. 498.)

Supreme Court of Alabama. April 25, 1929.

Rehearing Denied June 13, 1929.

Stevens, McCorvey, McLeod, Goode & Turner and C. M. A. Rogers, all of Mobile, for appellant.

D. R. Coley, Jr., of Mobile, for appellee.

FOSTER, J. This is a proceeding in equity for the annulment of a marriage solemnized between the parties in Louisiana. Both parties resided in Mobile, Ala., when the suit was begun, also when the marriage ceremony was performed. The circuit court overruled the demurrers to the bill, attacking the jurisdiction of the court because the marriage occurred in another state. In this we think the court was correct. Our view is that expressed in the decisions of many courts and text-writers, notably Antoine v. Antoine, 132 Miss. 442, 96 So. 305; Christlieb v. Christlieb, 71 Ind. App. 682, 125 N. E. 486; Ball v. Cross, 231 N. Y. 329, 132 N. E. 106, 39 A. L. R. 600; 38 C. J. 1348. The court of the state, having jurisdiction of the parties, extends to their marital status, without regard to where the marriage ceremony was performed.

Appellant cites 2 Schouler on Marriage, pp. 1413, 1414. This authority admits that the weight of the cases sustain the view that the court of the state where the parties reside has jurisdiction. It cites some cases to the contrary, but they only hold that the law of the state where the marriage occurred is controlling as to the nature and effect of such marriage contract.

In the Mississippi case, cited above, the parties resided also in Mobile, and went to Mississippi where the ceremony was performed. The annulment suit was filed in Mississippi, and that court refused to entertain it. Such would likely be the attitude of the Louisiana court, if the complainant here had filed suit in that state, while both parties reside in Alabama.

Our court has applied the principle to extend to the contract rights of parties relating to real estate in another state, when the courts of this state have jurisdiction of the person of the parties. Hume v. Kirkwood, 216 Ala. 534, 113 So. 613; People's Bank v. Barret, 216 Ala. 344, 113 So. 389; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Sugar Factories v. Fies, 213 Ala. 556, 105 So. 590; Allen v. Buchanan, 97 Ala. 399, 11 So. 777, 38 Am. St. Rep. 187.

The law of Louisiana was introduced in evidence to the effect that, when one is forced into a marriage contract under penalty of death if he refuses, the marriage will be annulled. Quealy v. Waldron, 126 La. 258, 52 So. 479, 27 L. R. A. (N. S.) 803, 20 Ann. Cas. 1374; Simmons v. Stevens, 132 La. 675, 61 So. 734. The rule is amplified as follows in the case of Quealy v. Waldron, supra:

" 'It is not every degree of violence or every kind of threat that will invalidate a contract;' " the threat " 'must be such as would naturally operate on a person of ordinary firmness, and inspire a just fear of great injury to person, reputation or fortune.' Civ. Code, art. 1851. It is also textual law that 'a contract, produced by violence or threats, is void, although the party, in whose favor the contract is made, did not exercise the violence or make the threats,' and was 'ignorant of them.' Id. art. 1852.

"The law considers marriage in no other view than a civil contract. Civ. Code, art. 86. No marriage is valid to which the parties have not fully consented, and 'consent is not free,' 'when it is extorted by violence.' Id. art. 91. Violence may be physical or moral; that is to say, it may consist of the coercion of the person continuing down to the moment of the celebration of the marriage, or of the coercion of the will by antecedent threats of bodily harm. In the latter case, the person is forced to elect between consenting to marry and exposure to the threatened evils. Such a forced consent does not bind the person who has been constrained to choose the alternative of marriage. Baudry-Lacantinerie, Droit Civil, vol. 2, Nos. 1714–1715.

"The question whether the violence employed in a particular case is sufficient to annul the marriage is in its nature one of fact left entirely to the appreciation of the judge. Carpentier-Du Saint, Repertoire, etc., vol. 27, p. 328, No. 132."

This is in accord with our own decisions, expressed in Kelley v. Kelley, 206 Ala. 334, 89 So. 508; Hawkins v. Hawkins, 142 Ala.

571, 38 So. 640. Many apt statements of the law are made in Kelley v. Kelley, supra, which have direct bearing and application here. We will not repeat them. We will, however, consider the facts of this case in the light of the principles therein referred to.

■ The circuit court rendered a decree granting relief to complainant, annulling the marriage between them for that complainant was forced to enter into it against his will. There was no subsequent cohabitation. Both parties agree that they had had sexual relations, and that respondent was pregnant —she claimed by complainant, and that he had promised marriage, and he denying such promise or his paternity of the child. Three brothers of respondent, who had been on good terms with complainant prior to this occasion, one night drove in a car to the residence of complainant in Mobile, and, he not being there, waited for him. He drove up later in his car. The evidence is in dispute as to what occurred. Complainant claims they threatened him with death, exhibiting a pistol, if he did not go with them without disclosing their purpose or destination. The brothers testified that no threats were made; that they asked him to go with them and right his wrong, and he readily consented, and stated that he ought to have done it sooner. They all four drove to New Orleans, where appellant had gone, and the ceremony was performed.

The depositions of the judge of the first city court of New Orleans, who performed the ceremony, of his clerk, who issued the license, and Dr. Lindner, who examined complainant, of Howard Moore and his wife (sister of appellant), and the great weight of all the evidence, disclosed that there was no indication of force, threats, or unpleasantness in New Orleans on the occasion; that complainant had ample opportunity privately to make complaint, and made none; that he appeared in good spirits, and made no objection or protest on any occasion; that, when complainant went to the doctor's office for examination, he was with the doctor alone in his private office some time, and paid the fee himself, giving no indication to him of any objection; that the ceremony was performed about 4 o'clock at the courthouse, where people generally and officers were passing; that, after the ceremony, they all went to the home of appellant's sister, where congratulations were passed, all partook of supper, complainant asked the blessing, and seemed in the best of spirits; that, when he left to return to Mobile, they all went to the train with him, where he kissed her, and promised to arrange for her to live in Birmingham until the baby was born, and send her money; that he returned to Mobile, but made no arrangements for her, sent her no money, and has done nothing for her or the baby except as forced by the courts.

Whatever fear he may have entertained, and however reluctant he may have been to start on the trip, we think the great weight of the proof is with the appellant, to the effect that appellee recognized that he was only doing his duty, or that his fear was such as was the natural and probable consequences of his own conduct, and that at the time of the marriage there was no force or direct threat of bodily harm. 9 R. C. L. 304; Kelley v. Kelley, supra.

Considering all the evidence, we are constrained to hold that appellee was not entitled to relief, and a decree denying relief is therefore directed, and the cause remanded for further proceedings on appellant's cross-bill. Faulk v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450.

Reversed, rendered, and remanded.

All the Justices concur, except

ANDERSON, C. J. (dissenting). The evidence in this case was largely ore tenus, and the trial court saw and heard the witnesses, and the conclusion reached was like unto the verdict of a jury, and should not be disturbed by this court, unless contrary to the great weight of the evidence. This rule obtains in equity as well as law cases, where the trial is by the judge without a jury. I think the decree should be affirmed, and therefore dissent from the judgment of reversal.