## OLINGHOUSE v. OLINGHOUSE.
### No. 35701.

Supreme Court of Oklahoma.
Jan. 12, 1954.

O. C. Lassiter, Tulsa, for plaintiff in error.

Quinn Dickason, Tulsa, for defendant in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

Plaintiff, Francis Olinghouse, sued defendant, Glenn Olinghouse, for divorce, alimony and child support money, alleging that Rebecca Lenora Olinghouse was the child of the parties hereto. After hearing, the trial court awarded plaintiff a divorce and child support money. Defendant has appealed.

Defendant alleges, and the evidence showed, that at the time of a purported ceremonial marriage between the parties, defendant had a living, undivorced wife, Mrs. Jerry Olinghouse, and that this was known to both plaintiff and defendant. On the other hand, there was evidence reasonably tending to support the finding of the trial court that Francis and Glenn Olinghouse lived together and held themselves out to the public as husband and wife after February 24, 1950, the date a divorce procured by Mrs. Jerry Olinghouse became final. She had filed suit for divorce before the ceremonial "marriage" between plaintiff and defendant.

The only question argued at length by defendant is the proposition of law that a marriage bigamous at its inception does not become a legal marriage when the previously existing impediment is removed; that plaintiff therefore was never the wife of defendant and is not now entitled to a decree of divorce or child support money, since there is no presumption that defendant is the father of the child involved.

In support thereof, defendant cites Clark v. Barney, 24 Okl. 455, 103 P. 598, wherein the court held that under circumstances such as exist here, when the impediment to marriage was removed "without more such could not ripen into a common-law marriage."

However, the rule announced in Clark v. Barney, supra, has been considerably modified, though never expressly overruled, in later decisions of this court. In Mantz v. Gill, 147 Okl. 199, 296 P. 441, the court held that where the second marriage was entered into in good faith and the parties continued to cohabit as husband and wife after removal of the impediment, a common-law marriage resulted. Thereafter, in Mudd v. Perry, 108 Okl. 168, 235 P. 479, Branson v. Branson, 190 Okl. 347, 123 P.2d 643, Hess v. Hess, 198 Okl. 130, 176 P.2d 804, and other cases, this court adopted ever-broadening interpretations of the meaning of the term "good faith". This is in accordance with the liberal construction of marriage laws in this state, as discussed in Andrews v. Hooper, 138 Okl. 103, 280 P. 424, and is grounded upon the humane desire to avoid marking the children of such marital relationships with the stigma of illegitimacy, as could be the case here.

We think also that, possibly because of inadvisable use of the term "ripen", the holding in Clark v. Barney has been misinterpreted. The court there said that a void ceremonial marriage, upon removal of an impediment, did not "ripen" into a valid common-law marriage. With this statement there can be no dispute; a void (as opposed to voidable) marriage, being a nullity, cannot "ripen" into anything, because in legal contemplation there is nothing to "ripen". But the rule in Clark v. Barney, supra, was in the earlier decisions interpreted to mean that no common-law marriage can ever come into being between parties who have purportedly "married" while a legal impediment existed. Whether or not the court intended to convey this meaning in Clark v. Barney, and because the ruling in that case has lost much of its applicability under later modifications, our previous holding in Clark v. Barney is hereby expressly overruled insofar as it conflicts with the following rule, which we deem to be controlling in this case:

The acts living together and holding themselves out as husband and wife, after removal of a legal impediment to marriage, constitute a common-law marriage, even though both parties knew of the impediment.

It is to be noted that nothing in this opinion should be construed as an approval of the conduct of the parties in the case at hand in cohabiting purportedly as husband and wife while the defendant had a living, undivorced spouse and prior to the expiration of the six months provided by statute.

In 55 C.J.S., Marriage, § 43d, a rule is stated to the effect that where, as here, parties enter into a course of illicit relations while there is an impediment to their marriage, it is presumed that the relation continues to be illicit after removal of the impediment "and the burden of proving a subsequent intermarriage rests on the party asserting it".

We believe plaintiff sustained such burden. The parties hereto agree that the divorce from Mrs. Jerry Olinghouse became final on February 24, 1950.; her sister testified that plaintiff and defendant lived together as husband and wife till Memorial Day of 1950; there was testimony that defendant, on Nov. 8, 1950, bought and paid for a monument to be erected at the grave of a deceased child of the parties hereto in a cemetery at Tulsa, and that on that occasion he introduced plaintiff as his wife. Plaintiff's own testimony, of course, was to the effect that she and defendant lived together as husband and wife after February 24, 1950. Defendant's evidence contradicted much of the above, but we cannot say that the judgment of the trial court

in this respect was against the clear weight of the evidence.

It is also contended that defendant lived with his first wife, Jerry, after their divorce, that he was therefore the common-law husband of Jerry and could not be the common-law husband of Francis. This contention is not supported by the record, which conclusively shows that Jerry Olinghouse, in an application for citation for contempt against Glenn, on February 13, 1950, said under oath that she and Glenn had not lived together as husband and wife since the issuance of the decree of divorce.

The rule which we adopt herein (syllabus 1 hereof) is followed in other jurisdictions. In Thomey v. Thomey, 67 Idaho 393, 181 P.2d 777, the Idaho Supreme Court dealt with a situation.in which two parties began living together as husband and wife while the woman had a living, undivorced spouse, both parties knowing this to be true. In holding that they became common-law husband and wife when they continued to live together as husband and wife after the wife procured a divorce from her first husband, the court quoted with approval from Morrison v. Sunshine Mining Co., 64 Idaho 6, 127 P.2d 766, 769, as follows:

"Although the contract and consent marriage between Morrison and appellant, entered into July 10, 1937, was *absolutely void at the time,* the more reasonable rule seems to be that a continuance of the marital relation and assumption of its duties, after the impediment ceased (decree of divorce became final) and Morrison was capable of contracting marriage, amounted to a consensual marriage, under the statute, and could not be assailed or avoided."

At the hearing on motion for new trial, defendant Glenn Olinghouse produced one Scott Hamm as a witness; Hamm testified willingly as to illicit relations with plaintiff during June or July of 1950. Even if the testimony of this witness were fully credible (he was a former employee of defendant Glenn Olinghouse, and he testified to sexual relations with plaintiff two weeks before and three days after his "happy" marriage to another woman), it had remote, if any,

bearing on the question of the existence of a common-law marriage between Glenn and Francis Olinghouse immediately after Glenn's divorce from Jerry became final on February 24, several months before the alleged illicit intercourse.

In the consideration of this case, we have been governed by the following well-established rule of law:

"In cases of equitable cognizance this court will examine the entire record and weigh the evidence, but unless the judgment rendered is clearly against the weight of the evidence it will not be disturbed on appeal." Guy v. Guy, 204 Okl. 642, 233 P.2d 266.

The judgment of the trial court is affirmed.

CORN, ARNOLD, O'NEAL and BLACKBIRD, JJ., concur.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, J., dissent.

HALLEY, Chief Justice (dissenting).

The majority opinion has adopted a rule which goes further than our Court or any other Court has gone and proceeds to overrule a case which has been the law in this State for forty-four years. Clark v. Barney, 24 Okl. 455, 103 P. 598. Although the foregoing case is stricter than the present general rule it is still sound in my judgment. The present general rule appears to be that, if parties desire marriage and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant, and continued after the disability is removed, will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment. 104 A.L.R. p. 12, Note II a.

There is no question but that Francis Bracey who called herself Francis Olinghouse entered into a void ceremonial mar-

riage with Glenn Olinghouse in Bentonville, Arkansas, on the 4th day of June, 1949, at which time Glenn Olinghouse was married to Jerry Olinghouse. Both Francis Bracey and Glenn Olinghouse knew that Glenn Olinghouse was married and undivorced from Jerry Olinghouse. It is the settled rule in this and many other jurisdictions that:

"If intercourse between persons of opposite sex was illicit in its inception because of their failure or disability to enter into a marriage by ceremony or by agreement, it is presumed to continue so, and the burden of proving a subsequent intermarriage rests on the party asserting it; and the mere fact that the parties continued to cohabit does not give rise to a presumption of marriage. This presumption applies where a prior marriage is shown to have been in existence at the time of a second marriage, and the burden of proving a remarriage to the second spouse after the dissolution of the first marriage by death or divorce rests on the party asserting the validity of the second marriage." 55 C.J.S., Marriage, § 43 d(2), p. 898.

Francis Bracey became pregnant by Glenn Olinghouse when she was a single woman and he was a married man. It was an illicit or meretricious relationship as there was a legal impediment to their marriage. There is nothing about this void marriage and subsequent cohabitation that was in good faith. Glenn Olinghouse entered into a void ceremonial marriage to give his putative child a name. It was not a solid marriage. There was nothing to indicate that he intended to make Francis Bracey his wife from there on. He certainly did not desire marriage. It was a "fly-by-night" affair at best.

There is evidence that though a divorce from him was granted Jerry Olinghouse on August 24, 1949, that he lived with her as husband and wife after the divorce. This Court held in Horrigan v. Gibson, 87 Okl. 1, 206 P. 219, that if during the cohabitation with one woman the man cohabits with another woman no presumption of a marriage with either arises. There was evidence that Jerry and Glenn Olinghouse had not so lived as husband and wife after the divorce but in my opinion the evidence that they did so live is the stronger.

In former opinions we have approved as a marriage a relationship that resulted from the impediment to marriage having been removed and the parties continued to live together and hold themselves out as husband and wife in good faith and with matrimonial intentions. Those elements do not exist in the purported marriage under consideration. After the baby of the parties died, Glenn Olinghouse said he was through and after that the parties did not carry on the family relationship with honest intentions and proper purposes.

I submit that the rule laid down in Clark v. Barney, supra [24 Okl. 455, 103 P. 600], which is as follows:

"* * * Under said admission the parties knew that they had not the capacity to consummate a marriage contract, and when they assumed such relations they knew it was unlawful and adulterous; nothing being bona fide. And whilst it is the policy of the law to encourage legitimacy, yet, in order to do so, it will not encourage licentiousness. This relation in its inception being bigamous and adulterous, after the death of the said Margaret Barney there is no presumption of a change of relation, and if there was such a change it must expressly appear by proof, to place the parties in the eyes of the law in a lawful relation. Common-law marriage grows out of good faith, honest intentions, and proper purposes, and if wilful bigamous relations, after the death of the party who has been wronged by the other spouse, are to ripen per se by the continuance of such cohabitation, without any perceptible change in the manner of such relations, into a common-law marriage in order to put the seal of legitimacy upon such cohabitation, it would tend to put a premium upon the disregard of marital relations, rather than the ukase of the law against it."

is the better rule in those cases where good faith is lacking. In all the cases where we

have not followed the rule in Clark v. Barney, supra, there was a definite showing of matrimonial intention by a long continued living together, a definite desire to be married and the holding out as husband and wife to the exclusion of all others.

I dissent.