Spring Term
18 39.

8d 170
99 538

CHANCERY. **Jackson's Administrators *against* Moore and Wife.**

[M. Owsley for appellants : Messrs. Morehead and Brown for appellees.]

FROM THE CIRCUIT COURT FOR BOURBON COUNTY.

*June 7.*　　Chief Justice ROBERTSON delivered the Opinion of the Court.

Statement of the case.　WILLIAM D. JACKSON, having an illegitimate child named *Virilla,* afterwards married the mother, recognized Virilla as his daughter; and had, by the same mother, a postnuptial son named *Columbus,* and then died, his wife and two children surviving.

After the subsequent death of *Columbus* and his mother, Samuel D. Jackson—an unmarried and childless brother of Virilla's father—also died, leaving a mother and seven brothers and sisters, and his said niece, *Virilla,* the only claimants of his undevised estate.

Upon a bill filed by *Virilla* and her husband, for the distributive portion claimed by her in the slaves and personal estate of her said deceased uncle, the Circuit Court decreed to them, against the administrators of the decedent, three hundred and thirty eight dollars sixty eight cents.

The administrators now seek the reversal of that decree, and rely on three grounds:—

*First*—That, being an antenuptial child, the defendant, *Virilla,* is not the legal representative of her father. *Second*—that, if she be such representative, still, her father having died before the death of her uncle, the living mother, brothers and sisters of that uncle are alone entitled to his estate. And, *third*—that, if the defendants be entitled to any thing, the decree is nevertheless for too much.

But, in our opinion, neither of these objections to the decree should be sustained by this Court.

The common law doctrine, that one born a bastard can never be-　*First.* The common law doctrine—that a bastard at birth can never become legitimate—has been repealed by the 17th section of the Virginia statute, of 1785,

" *directing the course of descents*," re-enacted in Kentucky by the nineteenth section of the act of 1796, " to reduce " into one the several acts directing the course of de- " scents "—which is in these words: " Where a man, " having by a woman one or more children, shall *after-* " *wards intermarry with such woman*, such child or children, " if *recognized by him, shall be thereby legitimated.* The " issue, also, *in marriage* deemed *null in law*, shall, *never-* " *theless*, be *legitimate*." 1 *Stat. Law*, 561–2–5.

By these provident enactments, *Virginia.* and *Kentucky* have adopted a principle of the *cicil law*, in lieu of a harsh and unreasonable rule of the old *common law* of *England.*

It was evidently the object of these legislative provisions, to *legalize*, upon the prescribed conditions, the births of antenuptial children, and to make such children, in all respects, as legitimate as they would have been, had they been the issues of lawful wedlock. And such, in our opinion, is obviously the constructive effect of those enactments, so far as they apply to children born before a marriage *de facto* of the parents. According to the statutes, the subsequent marriage of the parents, and recognition of any such child by the father, *ipso facto* legitimates the child, who would otherwise be illegitimate.

There is no other limitation or qualification in either the letter or the policy of these enactments. And therefore, as the defendant *Virilla* had, by the marriage of her parents and the subsequent recognition of her by her father, become his legitimate child necessarily in some sense, and for some purpose, she is, as necessarily such a child, in every sense and for every purpose of filial legitimacy. And consequently, she was as much his heir and distributee as his postnuptial son *Columbus* could have been.

*Second.* The twenty fourth section of an act of 1797, tributions recited, and their effect determined: *inter alia*, that the descendant or descendants of a deceased father inherit, *per stirpes*, whatever the father (if living) would be entitled to from the same source. And so *held*, that, where the father of an illegitimate daughter married her mother, and, by her, had a son, and he, his wife and son died—the daughter, surviving, is entitled (tho' born illegitimate) to a distributive share of the estate of a deceased brother of her father—equally with his mother, brothers and sisters—just as her father would have been entitled, if he had been living at the death of his brother.

*Margin notes:*

come legitimate, has been repealed, and the principles of the civil law adopted,by. statutes of Virginia and Ken. by which it is provided, that antenuptial children shall be legitimated by the father's marriage to the mother, and recognition of the children; & that the issue of a marriage deemed null in law, shall, nevertheless, be deemed legitimate. By these statutes, children so circumstanced, are legitimated as heirs and distributees of the father, and for every purpose.

Several clauses of the statutes of descents and distributions

(1 *Stat. Law*, 660,) provides that personal estate " shall " be distributed in the same proportions, and to the same " persons, as lands are directed to descend in and by an " act of General Assembly, entitled an act directing the " course of descents." ·

The act of 1785, " directing the course of descents," as well as the act of 1796, on the same subject, contains these provisions as to the descent of an intestate's estate:—

" Sec. 2. To his children or *their descendants*, if any " there be."

" Sec. 3. If there be no children nor *their descendants*, " then to his father."

" Sec. 4. If there be no father, then to his mother, " brothers and sisters, *and their descendants*, or such of " them as there be."

" Sec. 5. If there be no mother, nor brother, nor sis- " ter, *nor their* descendants, then the inheritance shall be " divided into two moieties, one of which shall go to " the paternal, and the other to the maternal kindred," &c.

Now, it is evident that, in each of the cases provided for by each of the foregoing sections, and in each case equally, and precisely in the same way, and to the same extent, the descendant or descendants of a deceased father will be entitled to inherit, per *stirpe*, whatever the father would himself have been entitled to inherit, from the same source, had he been still living.

The surviving children of the decedent, *and* the children of such of them as shall have died before him, shall inherit first—the grand children standing in the places of their deceased parents. If there be no children, *nor* any descendant of a child of the decedent, then, and only then, his father will be entitled: in like manner, when the brothers and sisters are entitled to inherit, the " *descendants*" of such of them as shall be dead, are, at the same time, and equally, entitled *per stirpes;* and it is only when there is no such *descendant*, that the ascending collateral kindred come in.

It would, therefore, be as unreasonable to decide that a legitimate niece, whose father is dead, would not

be entitled equally with his surviving mother, brothers and sisters, to inherit the estate of her intestate uncle, as it would be to determine that a legitimate grand child, whose parents are dead, shall not, equally with the surviving children of the deceased, participate in the inheritance of his estate, just as the father might have done had he been still living.

And, unless we are wrong on the first point, all legitimate children are " *descendants*," within the contemplation of the law, whether they were born in wedlock, or were made legitimate only by subsequent marriage and recognition, according to the statute.

We therefore concur with the Circuit Judge in the opinion that, the defendant *Virilla* is entitled to one ninth part of the distributable estate of her deceased uncle, S. D. Jackson.

*Third.* Nor have we perceived that the amount decreed exceeds what is equitably right. It appears to be not more than one ninth of the distributable fund ascertained and fixed according to equitable principles, after deducting a reasonable allowance which was made to the administrators, and excluding a *post mortem* and almost *post litem* claim of nearly six hundred dollars, asserted, for the first time, before the auditor in this case, by one of the administrators, for visiting his deceased brother, Samuel D. Jackson, and occasionally directing, (as others also did,) some of his domestic affairs, not long before his death.

In a suit for distribution, one of the adm'rs presented a large claim—never before exhibited—for visiting his brother, the intestate, and directing his affairs, occasionally, not long before his death: such a claim, so presented, was properly disallowed *in toto.*

According to the proofs, this unexpected, and, as we think, unreasonable claim, at " *the eleventh hour*," has no valid or substantial foundation, in morals, law, or equity; and therefore, we concur with the Circuit Judge in disregarding it.

Wherefore, perceiving no substantial error, the decree is affirmed.