|     |     |
| --- | --- |
| 85  | 49  |
| 99  | 538 |

CASE 11—PETITION EQUITY—JANUARY 18.

# Harris, &c., v. Harris, &c.

### APPEAL FROM BULLITT CIRCUIT COURT.

LEGITIMACY—ISSUE OF VOID MARRIAGE.—Where a marriage is void because a former husband or wife was living when the marriage was contracted, the issue of the marriage is legitimate whether or not the marriage was contracted in good faith, under the belief that the former husband or wife was dead. The issue of every void marriage is legitimate, except as provided in section 3, article 1, chapter 52, General Statutes, section 4 of that article not being intended to make an additional exception.

RICHARDS & HINES FOR APPELLANTS.

1. Where a marriage is contracted by both parties with full knowledge that a former valid marriage has been contracted by one of the parties with a third person who is still living, the issue of the second marriage is not legitimate. (Sections 3 and 4 of article 1, chapter 52, General Statutes.)

2. In construing a statute effect should be given to every provision. (Potter's Dwarris, p. 144.)

3. The general words of one clause of a statute may be restrained by the particular words in a subsequent clause of the same statute. (Covington v. McNickles' Heirs, 18 B. M., 286.)

4. The court will not hesitate to apply these familiar rules of construction, since they lead to a conclusion in accord with what the court would expect, looking to the common law and to the history of legislation in Kentucky, upon the subject. (M. & B., 565; Bishop on Marriage and Divorce, sec. 97.)

5. The tendency of modern legislation is to legitimize the issue of void marriages only where they have been contracted *in good faith.* (Bishop on Marriage and Divorce, secs. 302 and 303; Schueler on Husband and Wife, sec. 25.)

6. It cannot be presumed that the marriage between the parents of appellees was valid under the laws of Ohio. No such presumption exists as to polygamous marriages. (Sneed v. Ewing, 5 J. J. M., 490; Stevenson v. Gray, 17 B. M., 208.)

7. For the construction of a statute containing contradictory provisions as to legitimizing the issue of void marriages, see Hiram v. Pierce, 45 Me., 367.

F. P. STRAUS OF COUNSEL ON SAME SIDE.

CHARLES CARROLL for appellees.

1. The issue of an illegal or void marriage is legitimate. (Gen. Stats., chap. 52, art. 1, sec. 3.)
2. The court will not, if it can be avoided, so construe a statute as to bastardize the issue of a marriage, although it was void. (Dannelli v. Dannelli, 4 Bush; Newcomb v. Newcomb, &c., 13 Bush.)
3. Under the common law, cohabitation and recognition as husband and wife were sufficient to constitute a valid marriage. (Kent's Com., vol. 2, p. 87; Estill v. Rogers, 1 Bush.)

   And while this is not sufficient under our statute to constitute a valid marriage, it is sufficient to constitute a "void marriage" within the meaning of the statute.

A. DUVALL on same side.

1. The law always favors the claims of legitimacy, and the courts will not, by construction, add to or enlarge the scope of the exceptions to the statute legitimizing the issue of *all* void marriages, which, at the time of the enactment of the Revised Statutes, had been in force over fifty years. (1 Stat. Laws, 565; 2 Stat. Laws, 1153, 1157; 2 Rev. Stats., chap. 47, art. 1, secs. 2 and 3; Gen. Stats., chap. 52, art. 1, sec. 3.)
2. Section 4 of art. 1, chap. 52, Gen. Stats., provides for a *part* of what had been *fully* provided for in section 3, and may, therefore, be regarded as simply surplusage.
3. The record shows that when appellees were born their father and mother were living together as husband and wife, and mutually recognizing that relation as subsisting, and that their mother had been divorced from her former husband. The appellees are, upon these facts, the legitimate issue of their father, and entitled to inherit from him. (Crozier v. Gano, 1 Bibb, 257; Taylor v. Shamwell, 4 B. M., 576; Donnelly v. Donnelly, 8 B. M., 116; Chiles v. Drake, 2 Met., 147.)

CHIEF JUSTICE PRYOR delivered the opinion of the court.

The appellants and the appellees are each claiming to be the lawful heirs of John L. Harris, deceased. Appellants are his brothers and sisters, and the appellees are his children, under a marriage prohibited by law, and void by an express provision of the statute.

The court below adjudged in favor of the children, and the brothers and sisters appeal. Their right de-

pends upon the construction given the provisions of the statute on the subject.

By the second section of article 1, chapter 52, General Statutes, similar to the Revised Statutes, "marriage is prohibited and declared void—1. With an idiot or lunatic; 2. Between a white person and a negro; 3. Where there is a husband or wife living from whom the person marrying has not been divorced; 4. When not solemnized or contracted in the presence of an authorized person or society; 5. When, at the time of marriage, the male is under fourteen, or the female is under twelve years of age."

Section 3 of the same statute provides that "the issue of an illegal or void marriage shall be legitimate," except the issue of an incestuous marriage; that the marriage between a white person and a negro or mulatto *shall not be legitimate;* and that when one of the parties is an idiot or lunatic, the issue shall be legitimate as to both. The third section contains all the exceptions to be found in the statute on the subject, and therefore, by reason of section 2, the offspring of all marriages declared void by that section are legitimate, unless within the exceptions mentioned in section 3.

It is, however, under section 4 that the appellants, the brothers and sisters, assert their claim to the estate of the decedent. That section reads: "4. Where the marriage is contracted in good faith, and with the belief of the parties that a former husband or wife then living was dead, the issue of such marriage, born or begotten before notice of the mistake, shall be the legitimate issue of both parents."

The mother of these children (the appellees), whose maiden name was Deacon, married one Smith Ash in August, 1860. The marriage took place in Cincinnati, Ohio, was properly solemnized, and in every respect a legal marriage. She was then only fifteen years of age, and separated from her husband in a short time after the marriage, instituting an action for a divorce against him that was dismissed. After the dismissal of the suit for a divorce, and while she was the lawful wife of Ash, she entered into a contract of marriage with John L. Harris, the father of these children, that was also consummated at Cincinnati, with all the forms and solemnities of the law, and would have been valid but for the reason that Ash, the husband, was then living, and no divorce had been obtained by either party. After the marriage with Harris they returned to the neighborhood where Ash lived, and not long after, Ash, by a proper proceeding, obtained a divorce. These children, eight in number, were born after the divorce was granted. Harris and his wife, if she can be properly called his wife, lived together as man and wife for eighteen or twenty years, and Harris died recognizing that relation, and they were in fact regarded always as man and wife by their friends and neighbors.

Since the adoption of the Revised Statutes, mere cohabitation and a recognition of the marital relation between parties, does not evidence a valid marriage, or make the parties husband and wife. The old common law rule has been abolished, and the marriage in this State must be in accordance with the mode prescribed by the statute, and if not, the marriage is void. So it is immaterial how long Harris and the mother

of these children lived together as man and wife after Ash obtained a divorce from her, as no such facts could establish a valid marriage when the testimony is clear that her husband, Ash, was living at the time, and that fact known to both parties, Harris and Mrs. Ash, when the marriage ceremony was performed between them at Cincinnati. The last marriage was void from its inception, and so continued up to the death of Harris. The fact that it was void does not, however, make their children illegitimate—that is, bastardize them, so as to make them incapable of inheriting from their parents.

The act of 1797 declared in substance "that the issue in marriage deemed null in law shall nevertheless be legitimate." That act continued in force until the adoption of the Revised Statutes, when certain exceptions to the statute, by which such children were made legitimate, were inserted. The law of the Revised Statutes is embodied in the General Statutes, and the exceptions are to be found in section 3, already given. Where a marriage actually takes place, that is, when it is solemnized according to the forms of law, although void as between the parties, their offspring will be deemed legitimate, unless they come within the exceptions mentioned: 1. The offspring of an incestuous marriage; 2. The offspring of a marriage between a white person and a negro or mulatto. We find no other exceptions mentioned in the statute, and section 4, relied on by counsel, is meaningless, unless its enactment was intended to prevent those who married under the mistaken belief that their husband or wife was dead, from suffering the penalties of the law imposed

in such cases. The framers of the statute, although they had made the children legitimate when the marriage was void, would seem by the fourth section to have believed they had omitted something from the statute by which children might be bastardized, and therefore said, that where the marriage is contracted in good faith, and with the belief of the parties that a former husband or wife, then living, was dead, the issue of such marriage, born or begotten before notice of the mistake, shall be the legitimate issue of both parents. They had already said in a previous section, that when one married, having a husband or wife living, when no divorce had been granted, the marriage should be void, but the children legitimate; therefore, there was no reason for the adoption of the fourth section, because the state of case had already been provided for, and to construe the fourth section as counsel for appellants contend, would render the offspring illegitimate in all cases where their parents, or either of them, at the time of their marriage, had a husband or wife living from whom they were not divorced. They had provided that if a former husband or wife was living, the children of the second marriage should be legitimate. And now, by reason of the fourth section, it is argued that they cannot inherit unless, at the time of the void marriage, they supposed the first marriage had ended by reason of death. That if there was a mistake as to the death, the children are legitimate up to the time their parents had notice that the first husband or wife was living, and after that they are bastards. Such an absurdity was not intended by the law-maker, and he was evidently providing for a case

that he supposed had been omitted from the second and third sections, when they really embraced it. The fourth section does not say that the children begotten after notice to their parents shall be illegitimate, nor does such a result follow because of the general rule of construction, *Expressio unius est exclusio alterius*, for the reason that some meaning must be attached to the second and third sections of the act to accomplish the object in view, which was to legitimize children who would otherwise be deemed bastards. Such was the legislative intent, and we will not imply or infer another exception to the rule by reason of the fourth section. That section was not intended as an exception, but was, in fact, a declaration of legitimacy on the part of children in a particular state of case, when the contingency had already been provided for in section 3.

In our opinion, these appellees are entitled to the estate of their father, and the judgment below was proper, and it is now affirmed.