[L. A. No. 3390. Department One.—May 3, 1913.]

In the Matter of the Estate of ORA E. ELLIOTT, Deceased.

MARRIAGE OF DIVORCED PERSON WITHIN YEAR OF DIVORCE IS NULLITY—COLLATERAL ATTACK.—Under section 61 of the Civil Code, as amended in 1897 (Stats. 1897, p. 34), where a former marriage has been dissolved in this state, a subsequent marriage contracted in this state by the divorced husband with another woman, during the life of his former wife, and within a year of the time when the decree of divorce was rendered, is a nullity, and open to attack collaterally by any one interested.

ID.—CONSENT NOT SUFFICIENT TO ESTABLISH MARRIAGE—SOLEMNIZATION ESSENTIAL.—Under the law of this state as it existed prior to

the amendment of section 55 of the Civil Code in 1895 (Stats. 1895, p. 121), marriage might be presumed from cohabitation as husband and wife, even though the intercourse had been, in its inception, illicit. Since that amendment, mere consent, followed by a mutual assumption of marital rights, duties, or obligations, is insufficient to constitute marriage. In addition to consent, a solemnization authorized by the Civil Code is essential.

ID.—COHABITING AS MAN AND WIFE AFTER ILLEGAL MARRIAGE CEREMONY—REPUTE AS MAN AND WIFE.—Where the only ceremony of the subsequent marriage was performed after the amendment of section 55 of the Civil Code, and was absolutely ineffectual, because in contravention of section 61 of that code, evidence that the divorced husband and such other woman, for a period of ten years, cohabited as man and wife, together with repute to the same effect, was insufficient to establish their marriage.

ID.—PRESUMPTION OF MARRIAGE—VOID ATTEMPT AT LAWFUL MARRIAGE. Since the amendment of section 55 of the Civil Code, the presumption "that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage," can have no force, where it appears that the only attempt to enter into a lawful marriage was in fact illegal and void.

ID.—AMENDMENT OF SECTION 61 OF CIVIL CODE—TITLE OF ACT OF 1897 —SUBJECT OF ACT STATED IN TITLE.—The title of the act of 1897, amending section 61 of the Civil Code, and reading as follows: "An act to amend section sixty-one of the Civil Code, relating to the granting of divorces," sufficiently stated the subject of the act to meet the requirement of section 24 of article IV of the constitution, that the subject of every act shall be embraced in its title. It cannot be said that "the granting of divorces" is so foreign to the subject of the act, as to make the reference thereto in the title a sufficient cause for declaring the act illegal.

ID.—TITLE OF ACT AMENDING SECTION OF CODE—ADDITION OF FURTHER DESCRIPTION.—The title of the act would have been sufficient if it had read, simply: "An act to amend section 61 of the Civil Code." The addition of further descriptive words cannot vitiate this sufficient title, unless such further words indicate a subject not really related to the matters covered by the body of the bill.

ID.—EFFECT OF AMENDMENT OF 1903 TO SECTION 61 OF CIVIL CODE— PREVIOUS VOID MARRIAGE NOT VALIDATED.—The further amendment of section 61 of the Civil Code in 1903 (Stats. 1903, p. 176), whereby the prohibition upon marriage within one year from the rendition of a decree of divorce was taken from the section, and instead there was inserted a provision invalidating a ·marriage within one year after the entry of an interlocutory decree of divorce, did not·have the effect to validate a marriage contracted in this state while the amendment of 1897 was in force, which was

invalid because entered into within one year of the divorce in this state of one of the parties.

ESTATE OF DECEASED PERSON—COMPETENCY OF DAUGHTER TO ADMINISTER MOTHER'S ESTATE—WANT OF INTEGRITY—INTRODUCTION OF EVIDENCE DISCLOSING MOTHER'S ADULTERY.—A daughter, in applying for letters of administration on her mother's estate, does not establish her incompetency for want of integrity, by offering in evidence a decree of divorce, which was admissible for the purpose for which it was introduced, although it showed that her mother had been guilty of adultery in her.lifetime.

APPEAL from an order of the Superior Court of San Luis Obispo County appointing an administratrix of the estate of a deceased person, and dismissing the petition and contest of another applicant.  E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Carlton W. Greene, for Appellant.

Carpenter & Gibbons, and M. R. Van Wormer, for Respondent.

SLOSS, J.—Ora E. Elliott having died intestate, rival applications for letters of administration of her estate were filed in the superior court of San Luis Obispo County by Blanche E. Johnston, her daughter, and David L. Elliott, claiming to be her surviving husband.  The daughter contested the application of Elliott, on the grounds: 1. That he never had been the husband of the decedent; 2. That he was incompetent to act because he was the surviving partner of the decedent, and, 3. That he was incompetent to act by reason of want of integrity.  The last ground was expressly abandoned at the trial.  The court declined to make any finding on the second ground.  With respect to the first, however, it found "that it is not true that said David L. Elliott is the husband or surviving husband of said deceased. That said David L. Elliott was never legally married to said" deceased.

Elliott had also filed a contest to the petition of the daughter, alleging her incompetency by reason of want of integrity.  The finding of the court was in favor of the daughter on this issue.

Upon these findings, and the further ones that Blanche E. Johnston was the only heir and next of kin of the deceased, and that Elliott was not an heir, the court made an order appointing said Blanche E. Johnston administratrix of the estate, and dismissing the petition and contest of Elliott. From this order Elliott appeals.

The appellant's main contention is that the evidence is insufficient to justify the finding that he was not the surviving husband of the deceased. There is no substantial controversy over the facts, the dispute being over the law applicable to those facts. It appears from the record that a ceremony uniting in marriage the appellant, David L. Elliott, and the deceased, then known as Ora E. Dobbins, had been performed by a justice of the peace in the city and county of San Francisco on the twentieth or twenty-first day of November, 1902. From that time until the deceased was committed to an asylum for the insane, a period of about ten years, the two lived together as husband and wife. Their home was in Paso Robles, to which place they went a few days after the ceremony, and there they occupied a house together. The decedent was known in the community as Mrs. Elliott, and she and Elliott there bore the repute of married persons.

Elliott had, however, been married before, and the respondent introduced in evidence the record in an action for divorce prosecuted in Tulare County against Elliott by his former wife, Eva Elliott. That action had resulted in a decree of divorce, granted to the plaintiff therein. The decree was dated February 1, 1902. This was less than one year before the solemnization of the marriage between Elliott and the deceased. The respondent's claim is that such marriage was absolutely void under the provisions of section 61 of the Civil Code, as that section then read. By an amendment adopted in 1897 (Stats. 1897, p. 34) section 61 was cast into this form: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless:

1. The former marriage has been annulled or dissolved; provided, that in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to

such subsequent marriage; . . ." The change then made consisted in the addition of the proviso in subdivision 1.

In view of the language of this enactment, declaring certain marriages to be "illegal and void from the beginning," it cannot be doubted that a marriage prohibited by the terms of the section is a nullity, open to attack collaterally by any one interested, and not merely voidable, and as such valid until annulled by the decree of a court in an action instituted for that purpose under the provisions of section 82 of the Civil Code. (See *Stierlen* v. *Stierlen,* 6 Cal. App. 420, [92 Pac. 329]; *Estate of Gregorson,* 160 Cal. 21, [Ann. Cas. 1912D, 1124, 116 Pac. 60].) It is not claimed by appellant that there was any ceremony of marriage between him and the deceased other than the one of November, 1902. If that ceremony was absolutely ineffectual, the allegation of marriage was not proved by the evidence of cohabitation as man and wife, together with repute to the same effect. There is, to be sure, a presumption "that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage." (Code Civ. Proc., sec. 1963, subd. 30.) But this presumption can have no force where it appears that the only attempt to enter into a lawful marriage was in fact illegal and void. (26 Cyc. 877.) At the time of the performance of the ceremony, the law of this state had been changed, so that mere consent followed by a mutual assumption of marital rights, duties, or obligations was no longer sufficient to constitute marriage. At that time there was, and ever since has been, required, in addition to consent, a solemnization authorized by the Civil Code. (Civ. Code, sec. 55.) Under the law as it existed prior to the amendment of section 55 (Stats. 1895, p. 121) marriage might be presumed from cohabitation as husband and wife, even though the intercourse had been, in its inception, illicit. (*White* v. *White,* 82 Cal. 427, [7 L. R. A. 799, 23 Pac. 276].) But since solemnization has been made essential to a valid marriage, a presumption of marriage can no longer be indulged in the face of a showing that there was no solemnization. The same reasoning necessarily leads to the conclusion that the cohabitation of the parties, after the expiration of the year during which any attempt on their part to marry was void, cannot be effective to ratify or validate the mar-

riage. (26 Cyc. 866, 867; *Harris* v. *Harris*, 85 Ky. 49, [2 S. W. 549].)

The appellant attacks the validity of section 61, as amended in 1897, his claim being that the act undertaking to make the amendment failed to comply with the requirement of section 24, of article IV of the constitution, that the subject of every act shall be embraced in its title. The enactment in question was entitled "An act to amend section sixty-one of the Civil Code, relating to the granting of divorces." It is contended that this title is misleading, and not fairly descriptive of the subject of the act, in that the enactment (or the section sought to be amended) in fact relates to prohibitions upon marriage, and not to the granting of divorces. But we think this argument places too strict a construction upon the constitutional provision. "It is now well settled that the constitutional provision . . . must be liberally construed, and that all that is required to be contained therein (i. e., in the title) is a reasonably intelligent reference to the subject to which the legislation of the act is to be addressed." (*Estate of McPhee*, 154 Cal. 385, [97 Pac. 878]; *Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383]; *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251].) The requirement of the constitution "is intended to protect the members of the legislature, as well as the public, against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein." (*Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251].) Certainly the subject of divorce, and its effect upon the rights of the parties, was to some extent involved in section 61, both before and after the amendment of 1897. It cannot, therefore, be said that a reference in the title to "the granting of divorces" is so foreign to the subject of the act as to justify a court in striking down the statute. It appears, from the decision in *Estate of Wood*, 137 Cal. 129, [69 Pac. 900], that this court was almost evenly divided on the question whether the amendment of 1897 to section 61 did or did not become a part of every divorce decree, and thus directly affect the granting of divorces. Upon a question apparently so difficult of solution, the legislative body should not be held to technical nicety in entitling proposed legislation, under penalty of having the enactment fail if a court should think

a different form of words more accurately descriptive. As was said in *Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251], "if the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain." The title here chosen meets the requirements of this test, even if, and this is all that can be claimed by appellant, the subject of the amendment was the marriage of persons in favor of or against whom a decree of divorce had been granted. Under the decision of this court, the title of the act would have been sufficient if it had read simply: "An act to amend section 61 of the Civil Code." (*People* v. *Parvin,* 74 Cal. 549, [16 Pac. 490] ; *People* v. *Oates,* 142 Cal. 12, [75 Pac. 337] ; see, also, *Beach* v. *Von Detten,* 139 Cal. 462, [73 Pac. 187].) The addition of further descriptive words cannot vitiate this sufficient title, unless such further words indicate a subject not really related to the matters covered by the body of the bill.

Section 61 was again amended in 1903. (Stats. 1903, p. 176.) By this last amendment the prohibition upon marriage within one year from the rendition of a decree of divorce was taken from the section, and instead there was inserted a provision invalidating a marriage within one year after the entry of an interlocutory decree of divorce. This change was made to bring the law into conformity with the legislation adopted at the same session, providing for interlocutory decrees of divorce. It is claimed by the appellant that this was a repeal of the prohibition which alone impaired the binding force of the marriage here in question, and that such repeal had the effect of validating the marriage. The theory upon which this argument is based is that section 61, as amended in 1897, is a purely penal statute; that it prohibits certain marriages and declares the invalidity of such marriages as a penalty for violation of the prohibition. Under the well-settled rule that the repeal of a penal statute takes away the remedy for violation of the statute (*First Nat. Bank* v. *Henderson,* 101 Cal. 307, [35 Pac. 899]); it is claimed that the remedy (i. e., the right to assail the marriage) is destroyed. But the principle upon which reliance is placed is not properly applicable to the situation before us. That section 61, as amended in 1897, operates as a prohibition, within certain limits, upon the marriage of divorced

persons, and that the invalidity of a marriage in violation of the statute is, in some sense, made the penalty for such violation, was the view apparently entertained by a majority of the court in *Estate of Wood*, 137 Cal. 129, [69 Pac. 900]. But the question there involved was the effect of the section upon a marriage solemnized in another state. The real point decided was that the section had no extraterritorial effect, and the expressions in the opinions of the members of the court must be read in the light of their bearing upon that point. Where, as in the case before us, the second marriage took place in this state, the section clearly, as we have already pointed out, made the marriage absolutely void. In the eye of the law, it was no marriage at all. We do not see how the repeal of the statute could have the effect of making valid that which had been "illegal and void from the beginning," at least where, as in this state, solemnization is necessary to a valid marriage. (26 Cyc. 869; *Wilbur* v. *Bingham*, 8 Wash. 35, [40 Am. St. Rep. 886, 35 Pac. 407].) To the extent that section 61 made the marriage void, it did something more than to fix a penalty. It stood as an effectual bar to the attempt of the parties to create the marital *status*. That *status* could be created only in the mode provided by section 55. The amendment of section 61 did not purport to operate as a curative act. It did not even, in this particular case, have the effect of removing the obstacle originally existing to a marriage of the parties, as that obstacle had already been removed by the lapse of time. But, since the parties did not ever contract a valid marriage, their attempt to do so was not rendered valid either by lapse of time or by the repeal.

The only other point made is that the court erred in finding that the daughter was not incompetent for want of integrity. The only basis for this attack upon her is that she offered in evidence the decree of divorce, which showed that the ground of divorce had been Elliott's adultery with the decedent, respondent's mother. Counsel for appellant indulged in some strictures upon this action of the respondent, asserting that in thus making public the misconduct of her mother, she showed a want of "sound moral principle." But this criticism goes rather to considerations of propriety or good taste than to the "want of integrity," which, under section 1369 of the Code of Civil Procedure, affects compe-

tency to act as administrator.   We cannot assent to the propo-
sition that the assertion of a clear legal right shows a want of
integrity.

The order is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing
in Bank.