## Tinsley v. Tinsley, et al.

(Decided December 16, 1921.)

### Appeal from Caldwell Circuit Court.

1. Bastards—Recognition and Acknowledgment.—A child born before the marriage of its mother is the heir of its father, who afterwards marries the mother and recognizes the child as his issue.
2. Bastards—Recognition and Acknowledgment.—Where a young man seduces a girl and she afterwards gives birth to a child, the circumstances showing that she had no relations with any other man, the presumption is that he is the father of the child and when he

voluntarily offers to and does marry the girl and thereafter acknowledges the child as his offspring, the child in law is heir and can inherit from its grandfather through its father.

3.  Homestead—Separate Tracts of Land.—Where a man owning more than one tract of land resides upon one tract with his wife at the time of his death, she will be entitled to homestead in the home farm but not to homestead in other disconnected tracts of land.

JOHN G. MILLER for appellant.

S. D. HODGES for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant, Marvin Tinsley, a colored man about twenty-three years of age, brought this action against America Tinsley and others for a sale of the real property belonging to the estate of Lewis Tinsley, deceased, and a division of the proceeds among the widow and heirs, including appellant, upon the averment that appellant is a son of Thomas Tinsley, the son of the intestate Lewis Tinsley. The answer denied that appellant Marvin Tinsley is the grandson of the intestate Lewis Tinsley or any way related to him, and charges that appellant Marvin Tinsley is an illegitimate child of Lucy Gray, now Lucy Patent. After the case was prepared by the taking of a number of depositions on either side it was submitted to the chancellor and a judgment entered dismissing appellant's petition and adjudging that he take nothing thereby, from which judgment he appeals.

It appears that old man Lewis Tinsley, a prosperous colored man living in Caldwell county, owned a farm of about eighty acres of land on which he lived, of the value of about $1,500.00, a one-half undivided interest in another tract of land containing about sixty-four acres and a house and lot of small value in the town of Princeton. He had three children by his first wife, two girls and a son named Thomas. There were no children by his second wife, America, who is appellee herein. About the time Thomas became of age he was courting a colored girl named Lucy Gray, who lived about six miles away from the Tinsley home. This girl was then about 16 or 17 years of age. Frequently Thomas in his buggy drove over to see Lucy and sometimes took her back home with him to stay two or three days with his sisters. This courtship went along for several months. Without warning Thomas suddenly skipped the country and a short time after his disap-

pearance the parents of Lucy discovered that she was pregnant with child. Henderson Gray, the father of Lucy, appeared before the grand jury of Caldwell county and caused Thomas Tinsley to be indicted for seduction of his daughter, Lucy, then under the age of 21 years. A warrant was issued upon the indictment and Thomas was arrested at Kuttawa by the officers and returned to the Princeton jail. Without the connivance or knowledge of either Lucy or her father, Thomas procured the officers to bring him to the home of Lucy, who was yet confined to her bed, her child being only two weeks old, where he was allowed to talk to Lucy and in the course of the conversation asked her to marry him, which she consented to do, whereupon arrangements were made for the wedding to take place at the county court clerk's office in Princeton. Both Henderson Gray, the father of Lucy, and Lewis Tinsley, the father of Thomas, participated in the arrangements for the wedding and witnessed the ceremony. After the wedding Thomas and his wife, Lucy, went to the home of Lewis Tinsley to make their home and remained there for some months. Later Thomas Tinsley ran away to Illinois and left his wife and baby, and a short time thereafter died in that state. All these facts are admitted, but it is insisted by appellees that Thomas is not the father of Marvin Tinsley, but that one Vest Dunning, a colored man living in the neighborhood, is his father. Of this there is absolutely no evidence. True a few witnesses say that Marvin favors Dunning, who had been dead for several years, and some of them testified that Dunning claimed to be the father of Marvin, but this last statement is mere hearsay and absolutely incompetent. It was in evidence by America Tinsley, who, we think, is a competent witness, that Thomas Tinsley denied that he was the father of Marvin and that he left home on that account. While the two daughters of Lewis Tinsley both testified to similar statements by Thomas, the evidence on their own behalf against their deceased brother, Thomas Tinsley, is incompetent and cannot be considered. On the other hand Lucy, the mother of Marvin, testifies positively that she had no sexual connection with any man except Thomas Tinsley before the birth of her child Marvin, and that Thomas Tinsley was the father of Marvin Tinsley. The circumstances bear her out in this statement because she had little or no access to any other man. Moreover, Thomas seemed to recognize the fact that he was the father of the child before its

birth, for he fled the country in anticipation of trouble which would arise out of his connection with the girl. In addition to this, when he was brought back by the officers he besought the girl to marry him without any solicitation or intimidation on the part of Lucy or her father. The evidence also shows that Thomas acknowledged the child as his son.

This evidence is sufficient to establish Marvin's right to participate in the estate of Lewis Tinsley, deceased, under section 1398, Ky. Statutes, which reads: "If a man having had a child by a woman shall afterwards marry her, such child or its descendants, if recognized by him before or after marriage, shall be deemed legitimate." The law favors the legitimacy of children and will not bastardize a child unless the evidence is clear and convincing. Stein v. Stein, 32 Ky. L. R. 664; Bates v. Meade, 174 Ky. 545.

We have no doubt that Marvin is the son of Thomas Tinsley nor that Thomas Tinsley at the time of his marriage to Lucy and afterwards acknowledged Marvin as his child. This being so Marvin is entitled to inherit one-third of the estate of Lewis Tinsley, deceased.

We are unable to tell upon what ground the court dismissed plaintiff's petition, whether upon the ground that Marvin was not the son of Thomas or upon the ground that America, the widow of Lewis Tinsley and holder of the homestead in the lands, was entitled during her life to the whole thereof, free from the claims of any and all of the heirs. From the evidence of America Tinsley we are convinced that she forfeited her right to homestead in the lands of Lewis Tinsley when she moved to Illinois to make her permanent home. However that may be, it is suggested in brief that America Tinsley is now dead and this question cannot again arise. She did not and could not claim a homestead in any part of the land other than the farm on which she and her husband lived at the time of his death. The petition should not, therefore, have been dismissed and the trial court erred to the great prejudice of appellant in so doing.

As the chancellor did not pass upon a claim made by Mrs. Wall, a daughter of Lewis Tinsley, that the deed made by her to her father, Lewis Tinsley, was not in fact a deed but only a mortgage to secure her father against loss on account of money advanced by him to her, and did not determine whether the land was susceptible of advantageous division in kind or should be sold as a whole and

the proceeds divided among the heirs, the cause is remanded for the chancellor's consideration and decree upon these contentions and upon the whole case in conformity to this opinion.

Judgment reversed.